| CHERYL DETILLIEU, ET AL. | NO. 23-CA-226 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, ET AL. | COURT OF APPEAL |
| | STATE OF LOUISIANA |

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 758-348, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

July 09, 2024

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Timothy S. Marcel

**JUDGMENTS VACATED;REMANDED**

    **FHW**
    **MEJ**

**MARCEL, J., CONCURS WITH REASONS**

    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
CHERYL DETILLIEU, ALFRED JOSEPH DETILLIEAU, III; AND MICHELE
DETILLIEU SERUNTINE INDIVIDUALLY AND ON BEHALF OF ALRED
DETILLIEU, JR., DECEASED

    Jeffrey A. Mitchell
    Monica C. Sanchez
    Andy J. Dupre
    Hugo L. Chanez

COUNSEL FOR DEFENDANT/APPELLANT,
LAMMICO AND SHAUN CARPENTER, M.D.

    Deborah Deo Gracias Trahan
    Tonya K. Gallaspy

**WICKER, J.**

In this medical malpractice proceeding, defendants, Dr. Shaun Carpenter and his insurer, Louisiana Medical Mutual Insurance Company ("LAMMICO"), appeal the trial court's October 11, 2022 judgment, rendered in accordance with a jury verdict, finding Dr. Carpenter committed medical malpractice and awarding damages to plaintiffs. Defendants also appeal the trial court's November 29, 2022 judgment casting them with costs of the proceedings. For the following reasons, we vacate both judgments and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

On March 17, 2013, Alfred Detillieu, Jr. went to the emergency room at Lakeview Regional Medical Center ("LRMC"), complaining that he had been experiencing dizziness, weakness, lightheadedness, nasal congestion, and vomiting for approximately two days. Dr. Shaun Carpenter, a board-certified emergency room physician, examined Mr. Detillieu and performed various tests.[1] Later that day, Dr. Carpenter prescribed medication for vertigo, anxiety, and nausea, and discharged Mr. Detillieu with instructions to follow up with an ear, nose, and throat doctor ("ENT") within two days.

On March 19, 2013, Mr. Detillieu saw Dr. Dennis Occhipinti, an ENT, who ordered an MRI of his brain. On March 21, 2013, Mr. Detillieu underwent the MRI, and it was interpreted by Dr. Arthur Satterlee, a radiologist. Dr. Satterlee's report indicates that the imaging showed multiple chronic infarcts/strokes in the cerebellar hemisphere and small areas of increased signal intensity, but Dr. Satterlee did not observe evidence of an ongoing or recent stroke.

Mr. Detillieu returned to the emergency room at LRMC on March 22, 2013, with complaints of altered mental status, dizziness, weakness, and nausea. Dr.

---

[1] Mr. Detillieu had reported to Northshore Redi-Med, L.L.C. two days earlier, on March 15, 2013, with complaints of headache, fatigue, congestion, and sore throat. He was treated by Dr. Tuan Nguyen.

Gregory Benton, an emergency room physician, admitted Mr. Detillieu to the hospital due to his altered mental status and leukocytosis (elevated white blood cell count). He also ordered consultations with a neurologist, Dr. Morteza Shamsnia, and an infectious disease specialist, Dr. Camille Bitar. Mr. Detillieu saw several doctors and underwent a second MRI of his brain. Dr. Michael Hall, a radiologist, interpreted the MRI and found acute to subacute strokes.[2]

Mr. Detillieu's condition continued to deteriorate into the following day, March 23, 2013. He was transferred to Ochsner Hospital where additional testing showed he suffered a series of strokes. Mr. Detillieu passed away on March 24, 2013.

Mr. Detillieu's wife, Cheryl Detillieu, and two of his adult children (collectively "plaintiffs") filed a request for a medical review panel seeking review of the treatment provided by LRMC and six doctors, including Dr. Carpenter, Dr. Satterlee, Dr. Hall, Dr. Bitar, Dr. John Simon, and Dr. Luis Alvarado.[3] On November 2, 2015, the medical review panel issued an opinion finding the evidence did not support the conclusion that any of the healthcare providers failed to meet the applicable standard of care. On February 29, 2016, plaintiffs filed suit against the same healthcare providers, asserting they breached the applicable standards of care in their treatment of Mr. Detillieu and were liable for the damages caused by their medical malpractice. They also sued LAMMICO as the professional liability insurer of the six doctors.

The specific allegations against Dr. Carpenter in plaintiffs' petition are that when he treated Mr. Detillieu on March 17, 2013, he failed to: 1) diagnose or consider that Mr. Detillieu was suffering a stroke; 2) order necessary diagnostic

---

[2] Dr. Ari Blitz, plaintiffs' expert radiologist, explained that for determining the age of the stroke, "chronic" generally means three weeks to months or years; "subacute" is usually 48 hours to about a week; "acute" is from six hours to 48 hours; and "hyper-acute" is in the first six hours.

[3] Dr. John Simon and Dr. Luis Alvarado are hospitalists, who treated Mr. Detillieu at LRMC on March 22, 2013.

testing in light of Mr. Detillieu's symptoms; and 3) ensure Mr. Detillieu was, in fact, stable upon discharge. The petition further asserts that if Dr. Carpenter had ordered an MRI or CT scan on March 17, 2013, it would have confirmed that Mr. Detillieu was having an acute cerebellar stroke.

From November of 2017 to July of 2020, each of the defendant healthcare providers filed a motion for summary judgment, asserting that plaintiffs could not meet their burden of proving a deviation from the applicable standard of care and seeking dismissal from this lawsuit with prejudice. Although plaintiffs initially filed memoranda in opposition to each motion for summary judgment, they subsequently indicated they did not oppose the motions of any of defendants, except Dr. Carpenter and LAMMICO. The trial court signed written judgments granting summary judgment in favor of LRMC, Dr. Satterlee, Dr. Hall, Dr. Bitar, Dr. Simon, and Dr. Alvarado, and dismissing them from this lawsuit. At a hearing on September 28, 2020, the trial court heard arguments on Dr. Carpenter and LAMMICO's motion for summary judgment and denied it. The court signed a written judgment denying the motion on September 30, 2020.

On September 12, 2022, the parties filed a lengthy "Joint Pre-Trial Order" into the record, in which each side listed the witnesses they intended to call, including many doctors, and their exhibits, as well as their objections to the other side's witnesses or exhibits. Prior to trial, the parties filed several motions in limine, which came for hearing shortly before trial. The trial court made five rulings that are pertinent to this appeal, the first four arising from plaintiffs' motions in limine. First, the trial court ruled that defendants were prohibited from calling any of the doctors who treated Mr. Detillieu and were initially named defendants, but had been dismissed via summary judgment, to testify at trial, including Dr. Satterlee, Dr. Simon, Dr. Alvarado, Dr. Bitar, and Dr. Hall. Second, the trial court ruled that defendants were prohibited from calling two of the three

medical review panel members, Dr. Richard Vanderbrook and Dr. Evangelos Sotiropoulos, on the grounds that their testimony would be cumulative. Third, the court ruled that defendants were precluded from offering any testimony or evidence of the potential third-party fault of Dr. Shamsnia, Dr. Tuan Nguyen, or Dr. Occhipinti. Fourth, the court limited the admissibility of the medical review panel opinion. And, fifth, the trial court denied defendants' motion in limine and ruled that Dr. Nguyen was qualified to render opinions on the standard of care for emergency medicine.[4]

A four-day jury trial commenced with jury selection on September 26, 2022, and concluded on September 29, 2022. At trial, in addition to Mr. Detillieu's family members, plaintiffs called several doctors in support of their case, including Dr. Robert Woolard, an emergency medicine specialist; Dr. David Newman-Toker, a neurologist; Dr. Shamsnia, a neurologist; Dr. Benton, an emergency room physician; Dr. Nguyen, a family medicine doctor, via video deposition; and Dr. Ari Blitz, a radiologist.

Defendants called Dr. Troxler, who was the emergency medicine doctor on the medical review panel. However, after Dr. Troxler testified regarding his education and experience, plaintiffs objected to his qualifications as an expert in emergency medicine. The trial court agreed with plaintiffs, found he was not qualified as an expert in emergency medicine, and precluded him from testifying about the standard of care for emergency medicine and from giving any expert opinion as to Dr. Carpenter's care of Mr. Detillieu. Defendants also sought to call Dr. Occhipinti, who appeared to testify pursuant to plaintiffs' subpoena but was released from it. After meeting in chambers with Dr. Occhipinti, without counsel

_____

[4] Defendants sought review of several of these rulings and a stay of the trial court proceedings via an emergency writ application filed in this Court on September 27, 2022. On September 28, 2022, this Court declined to exercise its supervisory jurisdiction, stating that these issues could be raised on appeal, and denied the request for a stay. *Detillieu v. Louisiana Medical Mutual Insurance Co., et al.*, 22-465 (La. App. 5 Cir. 9/28/22) (unpublished writ disposition).

for either side present, the trial court informed the parties that she told Dr. Occhipinti he was not required to testify and, therefore, he chose to leave. As a result, Dr. Carpenter himself was the only doctor permitted to testify for the defense.

At the conclusion of trial on September 29, 2022, the jury returned a verdict in favor of plaintiffs, finding they established the standard of care for a board-certified emergency medicine physician and that Dr. Carpenter breached the standard of care in his treatment of Mr. Detillieu, which was the proximate cause of plaintiffs' damages. The jury awarded plaintiffs $1,000,000 for Mr. Detillieu's general damages, $114,407.75 for his medical expenses, $2,000,000 for Mrs. Detillieu's damages, and $250,000 each for Mr. Detillieu's two children's damages. On October 11, 2022, the trial court rendered judgment in accordance with the jury's verdict, but reduced the general damages award to $500,000 pursuant to La. R.S. 40:1231.2.

On October 25, 2022, plaintiffs filed a "Motion for Article 970 Judgment," pursuant to La. C.C.P. art. 970, requesting $191,847.63 in costs because the judgment on the merits was at least 25% greater than plaintiffs' pre-trial offer of judgment. They also filed a motion to tax defendants with costs, pursuant to La. C.C.P. art. 1920. After a hearing on these matters, the trial court rendered a judgment on November 29, 2022, granting the La. C.C.P. art. 970 motion in full and the La. C.C.P. art. 1920 motion in part, and finding Dr. Carpenter and LAMMICO solidarily liable for $215,058.98 in costs.

Defendants appeal both the trial court's October 11, 2022 judgment finding defendants liable for plaintiffs' damages, and the November 29, 2022 judgment ordering them to pay costs of the proceedings.

**LAW AND DISCUSSION**

On appeal, Dr. Carpenter and LAMMICO raise the following 13 assignments of error, primarily challenging the trial court's evidentiary rulings throughout the proceedings, as follows:

1) The trial court erred by not accepting Dr. William Troxler as an expert in emergency medicine and by confining his testimony to reading a four-sentence excerpt from the medical review panel opinion.

2) The trial court erred in refusing to allow testimony from any treating physician who was previously a party to the litigation and was dismissed by summary judgment.

3) The trial court erred in refusing to allow members of the medical review panel to testify.

4) The trial court erred in admitting only a four-sentence excerpt of the medical review panel opinion.

5) The trial court erred in refusing to allow defendants to present the testimony of Dr. Dennis Occhipinti per his voluntary appearance, subpoena or admitting into evidence his discovery deposition where all counsel had been notified the deposition would be used at trial in lieu of his live testimony and the witness was unavailable.

6) The trial court erred in refusing to allow defendants to present evidence of the third-party fault of Dr. Morteza Shamsnia, Dr. Tuan Nguyen, and Dr. Occhipinti, and erred in refusing to put third-party fault on the jury verdict form.

7) The trial court erred in refusing to allow defendants to proffer Dr. Occhipinti's deposition, Dr. Newman-Toker's deposition, and to make a more complete proffer of Dr. Satterlee's testimony.

8) The trial court erred in finding that Dr. Nguyen was qualified to testify to the standard of care for emergency medicine and to causation.

9) The trial court erred by allowing plaintiffs to present cumulative testimony from four witnesses, including three who are not emergency medicine specialists, that Dr. Carpenter breached the standard of care.

10) The trial court erred by allowing Dr. Robert Woolard to testify to opinions outside of his specialty.

11) The trial court erred by allowing testimony contradicting Dr. Satterlee's interpretation of the March 21st MRI, where the claims against him had been dismissed on summary judgment.

12) The trial court erred in refusing to allow defendants to impeach Cheryl Detillieu's trial testimony with her contradictory deposition testimony.

13) The trial court erred in awarding costs that were not proven, are excessive, and/or are not legally recoverable.

To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: 1) the standard of care applicable to the defendant; 2) that the defendant breached that standard of care; and 3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794; *Pignona v. Farber*, 13-192 (La. App. 5 Cir. 10/9/13), 128 So.3d 390, 397. A physician is required to exercise that degree of skill ordinarily employed under similar circumstances by others in the profession and also to use reasonable care, diligence, and judgment. *Hastings v. Baton Rouge General Hosp.*, 498 So.2d 713, 718 (La. 1986); *Fusilier v. Dauterive*, 00-151 (La. 7/14/00), 764 So.2d 74, 79. A physician is not required to exercise the highest degree of care possible. Rather, his duty is to exercise the degree of skill ordinarily employed by his professional peers under similar circumstances. *Id.*; *Gordon v. Louisiana State Univ. Bd. of Sup'rs*, 27,966 (La. App. 2 Cir. 3/1/96), 669 So.2d 736, 740, *writ denied*, 96-1038 (La. 5/31/96), 674 So.2d 263; *Richardson v. Cotter*, 51,637 (La. App. 2 Cir. 9/27/17), 245 So.3d 136, 143.

The trial court is granted broad discretion in its evidentiary rulings, which are not to be disturbed on appeal absent a clear abuse of discretion. *Moonan v. Louisiana Med. Mut. Ins. Co.*, 16-113 (La. App. 5 Cir. 9/22/16), 202 So.3d 529, 534, *writ denied*, 16-2048 (La. 1/9/17), 214 So.3d 869. On appeal, the court must consider whether the complained-of ruling was erroneous and whether the error prejudiced the party's case, otherwise a reversal is not warranted. *Id.*; La. C.E. art. 103(A). The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the

complainant's burden to so prove. *Ochoa v. Aldrete*, 21-632 (La. App. 5 Cir. 12/8/21), 335 So.3d 957, 963; *Moonan*, 202 So.3d at 534.

*Assignment of Error Number One*

In their first assignment of error, defendants argue the trial court erred by not accepting Dr. William Troxler as an expert in emergency medicine, because: 1) the evidence irrefutably established that Dr. Troxler was qualified to render an opinion regarding the standard of care for emergency medicine in 2013; and 2) plaintiffs waived any objection to Dr. Troxler's qualifications by not timely asserting it before the court-ordered deadline or timely filing a motion in limine.

Plaintiffs respond that Dr. Troxler was not qualified to testify as an expert in emergency medicine, because he had not worked in an emergency room since 2011, was not practicing medicine in 2013 when the alleged malpractice occurred, and was not board-certified in emergency medicine at the time of trial. They argue that Dr. Troxler was practicing family medicine at the time of trial and that the court correctly found he was qualified to testify as an expert in family medicine, but not emergency medicine.

The admissibility of expert testimony in Louisiana is governed by La. C.E. art. 702(A), which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: 1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Pertuit v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 14-752 (La. App. 5 Cir. 5/14/15), 170 So.3d 1106, 1109, *writ denied*, 15-1176 (La. 9/18/15), 178 So.3d 152.

The legislature has set forth specific requirements for a witness to be qualified to testify as an expert on the issue of whether a physician departed from the accepted standards of medical care. *Benjamin v. Zeichner*, 12-1763 (La.

4/5/13), 113 So.3d 197, 203. These four mandatory requirements are set forth in La. R.S. 9:2794(D)(1), which provides that a physician may only qualify as an expert on the applicable standard of care in a medical malpractice action if: 1) he is practicing medicine when the testimony is given or was practicing medicine at the time of the claim; 2) he has knowledge of the standard of care; 3) he is qualified based on training and experience; and 4) he is licensed to practice medicine or is a graduate of an accredited medical school. *Id.*

Although plaintiffs claim he does not meet the first requirement, Dr. Troxler testified that he was practicing medicine both at the time of the trial and at the time the claim arose. During questioning as to his qualifications, Dr. Troxler testified that at the time of Mr. Detillieu's care in 2013, he was board-certified in emergency medicine and was actively practicing. On cross-examination, Dr. Troxler acknowledged he was not working in an emergency room in 2013, but stated that he was teaching.[5] La. R.S. 9:2794(D)(2) provides that "practicing medicine" includes training residents or students at an accredited school of medicine.

When ruling that Dr. Troxler was not qualified to testify as an expert in emergency medicine, the trial court found that the third requirement of La. R.S. 9:2794(D)(1), *i.e.* that he is qualified on the basis of training and experience to offer an expert opinion on the accepted standards of care, was not satisfied. The court relied on La. R.S. 9:2794(D)(3), which provides that in determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is board-certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing in that area.

---

[5] Dr. Troxler's curriculum vitae was admitted into evidence and provides that he was a clinical assistant professor of emergency medicine at LSU Medical School from 2012 to 2015.

Dr. Troxler testified he finished his residency training in emergency medicine in 1983, and he practiced emergency medicine for over 30 years. He became board-certified in emergency medicine in 1985, was re-certified four times throughout his career, and actually administered board examinations to applicants seeking to be certified in emergency medicine 42 times. He chose not to re-certify his emergency medicine certification in 2021. Dr. Troxler further stated that he taught emergency medicine at Ochsner Hospital for 15 years and also served as the residency director of Ochsner's emergency medicine department. He taught emergency medicine as a clinical assistant professor at LSU Medical School as well.

Dr. Troxler was board-certified in emergency medicine when the claim arose in 2013, and he had substantial training or experience in emergency medicine both when the claim arose and when he was called to testify. The record clearly shows that Dr. Troxler met the requirements of La. R.S. 9:2794(D)(3) and was qualified to testify as an expert in emergency medicine based on his training and experience. We further point out that Dr. Troxler was the emergency medicine physician on the medical review panel, and the Louisiana Supreme Court has recognized the medical expertise of a medical review panel. *See Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC*, 23-483 (La. 10/20/23), 379 So.3d 615, 621, *reh'g denied*, 23-483 (La. 12/7/23), 374 So.3d 138.

The evidence reflects that Dr. Troxler met all of the requirements to qualify as an expert on the standard of care for emergency medicine. Accordingly, the trial court abused its discretion by finding that Dr. Troxler was not qualified to testify as an expert in emergency medicine and precluding him from testifying regarding the standard of care and other considerations pertaining to this field.

Defendants further argue that plaintiffs waived their right to contest Dr. Troxler's qualifications, because they did not file a motion in limine or object to

23-CA-226                                    10

his qualifications in the pre-trial order. The trial court issued a scheduling order on September 29, 2020, specifying that all discovery was to be completed within 90 days of receipt of the scheduling order and that motions challenging the qualifications or reliability of an expert were to be filed no later than 30 days after the completion of discovery. The trial court's scheduling order also specifies that failure to file a motion to challenge the qualifications or reliability of an expert will result in a waiver of any such objections.[6]

Although plaintiffs objected to some witnesses in the joint pre-trial order, there was no objection to Dr. Troxler, whom defendants indicated they would call to provide expert testimony regarding the standard of care, treatment, medical review panel, and damages. Plaintiffs did not object to Dr. Troxler's testimony until the middle of trial. When Dr. Troxler was called and plaintiffs objected to his qualifications, the trial court stated, "[t]his is hitting me from left field." Defendants' counsel pointed out that plaintiffs' objection to Dr. Troxler's expertise was untimely. The trial court, however, refused to address the timeliness issue, turning instead to Dr. Troxler's qualifications to testify as an expert in emergency medicine.

Trial courts enjoy great discretion with regard to modification or enforcement of pretrial orders. *Mariakis v. North Oaks Health System*, 18-165 (La. App. 1 Cir. 9/21/18), 258 So.3d 88, 95. However, defendants complain the trial court failed to enforce the scheduling order in an even-handed or fair manner against both sides. They assert that while the trial court, contrary to the scheduling order's time constraints, allowed plaintiffs to object to Dr. Troxler's testimony for the first time in court during trial, the trial court, conversely, strictly enforced the

---

[6] Pursuant to La. C.C.P. art 1551(B), a pre-trial order controls the subsequent course of the action. The theory inherent behind pre-trial procedure is avoiding surprise and orderly disposition of the case. *Perniciaro v. Hamed*, 20-62 (La. App. 5 Cir. 12/16/20), 309 So.3d 813, 833. A pre-trial order controls the subsequent course of the action, but it can be modified at trial to prevent manifest injustice. *Id.*; *Moonan*, 202 So.3d at 533.

scheduling order when defendants raised an objection to the expected testimony of plaintiffs' expert in radiology, Dr. Blitz.

On September 23, 2022, when addressing plaintiffs' motion in limine to exclude testimony from defendants who were previously dismissed on summary judgment, defendants objected to certain expected testimony from Dr. Blitz regarding Dr. Satterlee, arguing it would violate La. C.C.P. art. 966(G). The trial court refused to consider defendants' objection, because, although defendants had objected in the pre-trial scheduling order, they had not filed a motion in limine on the issue. We agree with defendants that plaintiffs' objection to Dr. Troxler's qualifications was untimely, and that the record shows disparate treatment of the parties' objections. Nevertheless, the trial court did discuss and address Dr. Blitz's expected testimony later in the hearing.

*Assignment of Error Number Two*

In their second assignment of error, defendants contend the trial court erred in refusing to allow testimony from any treating physician who had previously been a defendant in the litigation, but was dismissed by summary judgment. They assert that La. C.C.P. art. 966(G) only prohibits evidence to establish the fault of that party and direct or indirect references to any such fault, but does not preclude the former defendants from testifying as to facts, opinions, or observations. They argue that, in particular, Dr. Satterlee's testimony was critical, because he interpreted the March 21, 2013 MRI and did not see evidence of an ongoing or recent stroke. Defendants complain that while they were prohibited from calling Dr. Satterlee to testify in order to avoid any reference to him being at fault, plaintiffs were allowed to present extensive testimony from multiple experts who disagreed with Dr. Satterlee's interpretation of the March 21st MRI, suggesting that he may bear some percentage of fault.

Plaintiffs respond that defendants failed to preserve this issue for review, because they failed to proffer the testimony of either Dr. Satterlee or the other dismissed doctors. They further argue defendants' substantial rights were not affected, because Dr. Satterlee's MRI report was admitted into evidence, and defendants could have used it as they wished at trial.

Turning first to whether defendants preserved this issue for review, we find that they did. Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. *See* La. C.E. art. 103A(2). La. C.C.P. art. 1636 provides that "[w]hen the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence."

While the trial court denied defendants' request to either proffer Dr. Satterlee's detailed affidavit or to take his deposition to perpetuate his testimony as a proffer, the court did allow defendants to make a statement setting forth what they believed Dr. Satterlee's testimony would be, and also allowed plaintiffs to make a counter-statement setting forth what they believed Dr. Satterlee's testimony would be. Therefore, the record shows that defendants preserved this issue for appeal, as both La. C.E. art. 103(A)(2) and La. C.C.P. art. 1636 were satisfied.

We now address whether the trial court abused its discretion by excluding defendants, who were previously dismissed via summary judgment, from testifying at trial.[7] La. C.C.P. art. 966(G) provides:

---

[7] The written judgments dismissing these defendants specifically indicate that La. C.C.P. art. 966(G) would apply at trial to preclude evidence of their fault. It is noteworthy that these judgments were signed in 2018 and 2019, prior to the Louisiana Supreme Court's 2022 decision in *Amedee v. Aimbridge Hospitality, L.L.C.*, *infra*, which held that, as a matter of first impression, a defendant who pleads the affirmative defense of comparative fault may appeal a summary judgment dismissing a co-defendant, even absent an appeal by plaintiff, abrogating *Dixon v. Gray Insurance Co.*, 17-29 (La. App. 5 Cir. 6/15/17), 223 So.3d 658; and *White v. Louisiana Dep't of Transportation & Dev.*, 17-629 (La. App. 3 Cir. 12/6/17), 258 So.3d 11.

> When the court renders judgment in accordance with the provisions of this Article that a party or nonparty is not negligent, is not at fault, or did not cause in whole or in part the injury or harm alleged, that party or nonparty shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or nonparty… During the course of the trial, no party or person shall refer directly or indirectly to any such fault, nor shall that party or nonparty's fault be submitted to the jury or included on the jury verdict form…

This article serves to prohibit the shift of liability from a defendant who is currently involved in litigation to another party who was previously involved in litigation, but was dismissed by summary judgment. *Amedee v. Aimbridge Hospitality LLC*, 21-1906 (La. 10/21/22), 351 So.3d 321, 322.

At a pre-trial motion hearing on September 23, 2022, the trial court considered the issue of whether dismissed defendants would be permitted to testify at trial. Defendants' counsel argued that Dr. Satterlee, as a treating physician, should be allowed to testify, particularly where plaintiffs intended to call their radiology expert, Dr. Blitz, to testify that Dr. Satterlee's interpretation of the March 21st MRI was incorrect and that he used the wrong terminology. The trial court sustained plaintiffs' motion to exclude the dismissed doctors' testimony, but subsequently allowed plaintiffs' expert witnesses to offer evidence contradicting Dr. Satterlee's findings.

In granting plaintiffs' motion, the trial court stated, "[i]t's easier to have those defendants not testify and put the records of their treatment into evidence" in order to avoid violating La. C.C.P. art. 966(G). It continued, stating that La. C.C.P. art. 966(G) did not intend for a dismissed defendant "to come and appear as a witness much less an expert witness." The court further stated, "[w]hen people get out of a lawsuit, they want to be out of it. They don't want to come back and testify at trial." The court also opined that Dr. Satterlee's testimony was not necessary and there was "no way" to put him on the stand, because he would be

defending his treatment and it would be unfair to plaintiffs, who would not be allowed to effectively cross-examine him without possibly inferring fault.

Because the doctors at issue, including Dr. Satterlee, were released by summary judgment, they could not be considered in the allocation of fault, and no evidence was admissible to establish or reference their fault. However, in the present case, defendants did not seek to call the dismissed defendants to assign fault to them. Specifically as to Dr. Satterlee, defendants clearly sought to call him to establish that his interpretation of the March 21st MRI, finding no recent stroke, was correct. Counsel for defendants explained that she wanted to call Dr. Bitar, Dr. Simon, and Dr. Alvarado to testify about Mr. Detillieu's condition at the time of their care, and that she wanted Dr. Satterlee and Dr. Hall to testify about their interpretations of the MRIs.

A defendant in a medical malpractice case has the right to present a defense, just as any other defendant has. The protections of La. C.C.P. art. 966(G) for a dismissed defendant, who can no longer be allocated fault or found liable, do not prohibit a current defendant from calling treating physicians to testify as to their observations and treatment of the patient and his condition. Further, to the extent that expert testimony would be offered and implications of fault of a dismissed party were to arise, the parties could certainly object to that questioning at the time, if warranted.

Additionally, in *Amedee*, 351 So.3d at 334, the Louisiana Supreme Court considered La. C.C.P. art. 966(G)'s effect on the comparative fault provisions of La. C.C. art. 2323, and stated, "[i]mportantly, and in furtherance of a desire for fairness and justice to all parties, it is incumbent that a determination by summary judgment that a party is free of fault be correct." In the present case, plaintiffs consented to the summary judgment dismissal of the prior defendants and to the applicability of La. C.C.P. art. 966(G), thereby stipulating that these prior

defendants were free of fault. The provisions of La. C.C.P. art. 966(G) do not work both ways to benefit one side. That is, plaintiffs cannot stipulate these defendants were free of fault, but then argue they cannot testify in any manner because cross-examination would necessarily establish or refer to their fault.[8]

Based on the foregoing, we find the trial court abused its discretion by excluding Dr. Satterlee and the other dismissed defendants from presenting any testimony, particularly as to observations and findings made during their treatment of Mr. Detillieu. The trial court compounded its error by allowing plaintiffs' expert radiologist, Dr. Blitz, to testify as to his contradictory interpretation of the March 21st MRI, but not allowing Dr. Satterlee to testify about or explain his interpretation. The La. C.C.P. art. 966(G) limitation on evidence of or references to a prior defendant's fault is not one-sided. The trial court failed in its duty to apply the law in a fair and even-handed manner.

_Assignment of Error Number Three_

In their third assignment of error, defendants assert the trial court erred by refusing to allow all of the members of the medical review panel to testify at trial, finding that it would be cumulative. We agree.

The medical review panel consisted of Dr. Troxler, Dr. Vanderbrook, a radiologist, and Dr. Sotiropoulos, a hospital medicine specialist. According to defendants, they initially indicated they would not need to call Dr. Vanderbrook or Dr. Sotiropoulos, because the defendants of their respective specialties had been dismissed by summary judgment. Moreover, as Dr. Troxler was a specialist in

---

[8] During the October 13, 2022 post-trial hearing, after defendants' counsel stated what she believed Dr. Satterlee's testimony would have been at trial, plaintiffs' counsel made a counter-statement suggesting that Dr. Satterlee could have been cross-examined to some extent without inferring fault. In counsel's counter-statement, he opined that Dr. Satterlee would have agreed that diffusion weighted imaging is used to determine the age of a stroke, but he "did not do diffusion with these scans. It was a protocol set up by the radiologists, the group at the time, and I was just following his [sic] protocols." Plaintiff's counsel further indicated Dr. Satterlee would have agreed that it would have been more accurate if he had found the age of the strokes was indeterminate, rather than chronic, but this "misnomer did not cause or contribute to Mr. Detillieu's deteriorating condition."

emergency medicine, they believed he would be the most relevant medical review panelist to assess Dr. Carpenter's actions.

However, defendants assert that plaintiffs amended their witness list two months before trial to indicate that Dr. Blitz and Dr. Nguyen would testify regarding the standard of care. They also learned that Dr. Blitz would testify regarding his interpretation of the March 21st MRI, which was contrary to Dr. Satterlee's interpretation. Therefore, they sought to call Dr. Vanderbrook and Dr. Sotiropoulos to testify for the defense and counter their testimony. However, the trial court denied their request to call these medical review panelists at trial.

La. R.S. 40:1231.8(H) provides that in a medical malpractice proceeding, "either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify." In *Medine v. Roniger*, 03-3436 (La. 07/02/04), 879 So.2d 706, 712, the Louisiana Supreme Court found the statutory provisions of La. R.S. 40:1231.8 (formerly La. R.S. 40:1299.47) "not only allow medical review panelists to testify on behalf of a party as paid experts," but they "actually contemplate that panelists will testify more often than not in that manner." The Supreme Court further provided, "[o]nce their duties as panelists have been completed and the panel's written opinion has been rendered, the panelists are free to participate in a subsequent trial on the same claims considered by the panel in the same manner as any other medical expert." *Id*. at 715. Recently, in *Keller v. Touro Infirmary*, 23-830 (La. 6/17/23), 362 So.3d 403, the Louisiana Supreme Court found the trial court erred in allowing the defendants to call only one member of the medical review panel as a witness. It stated that La. R.S. 40:1231.8(H), providing that either party shall have the right to call any member of the medical review panel as a witness, is mandatory in nature. *Id.*

In *Gros v LAMMICO*, 20-83 (La. App. 1 Cir. 11/12/20), 316 So.3d 61, 66, the plaintiff filed a medical malpractice lawsuit against two doctors and LAMMICO. Two years before trial, the medical review panel determined that neither doctor breached the standard of care. At trial, the defendants presented the testimony of the three medical review panel members. *Id.* at 67. Thereafter, the jury found in favor of the defendants, and the trial court rendered a judgment in accordance with the jury's verdict. On appeal, the plaintiff argued the trial court erred by allowing all members of the medical review panel to testify, because their testimony was cumulative and caused her prejudice. *Id*. at 71. The appellate court disagreed, finding no error in the trial court's decision to allow all three medical review panelists to testify. *Id.* at 71. The Court cited La. R.S. 40:1231.8(H) and stated that any medical review panel member may be called as a witness by either party at trial. The Court further pointed out there were two years between the rendition of the medical review panel opinion and the trial, and the plaintiff had the opportunity to discover the medical review panel opinions prior to trial and to cross-examine each panel member at trial. *Id.*

Similar to the *Gros* case, the medical review panel in the present case found that none of the six doctors named in the complaint breached the applicable standard of care owed to Mr. Detillieu. The medical review panel opinion was rendered in 2015, and trial did not occur until 2022. In accordance with La. R.S. 40:1231.8(H) and the jurisprudence, defendants had the right to call any or all of the medical review panel members to testify.

Dr. Troxler was on the medical review panel and was defendants' only emergency medicine expert, other than Dr. Carpenter himself. Because the trial court failed to qualify him as an expert in emergency medicine and also ruled that Dr. Vanderbrook and Dr. Sotiropolous could not be called to testify, none of the medical review panel members were allowed to testify as to the standard of care or

opine on Dr. Carpenter's actions. Accordingly, we find the trial court abused its discretion by denying defendants' request to call the members of the medical review panel to testify at trial.

*Assignment of Error Number Four*

In their fourth assignment of error, defendants assert the trial court erred by admitting only a four-sentence excerpt from the medical review panel opinion. They contend the trial court should have allowed the entire opinion to be provided to the jury. Plaintiffs respond that the full medical review panel opinion references claims against other defendants who were dismissed via summary judgment and, therefore, admission of the entire opinion would violate La. C.C.P. art. 966(G).

In *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/01/11), 65 So.3d 1218, 1226-27, the Louisiana Supreme Court acknowledged that, pursuant to La. R.S. 40:1231.8(H), a medical review panel opinion is admissible, expert medical evidence that may be used to support or oppose a subsequent medical malpractice suit. However, the Court found the medical review panel in that case exceeded its authority by resolving an issue of fact reserved for the jury and, therefore, the opinion was inadmissible. Nevertheless, the Court found the trial court's error in admitting the opinion was harmless, where the offending language was redacted. *Id.* at 1230.

In *Matranga v. Parish Anesthesia of Jefferson, L.L.C.*, 14-448 (La. 5/14/15), 170 So.3d 1077, 1091, *writs denied*, 15-1143 (La. 9/18/15), 178 So.3d 148, and 15-1168 (La. 9/18/15), 178 So.3d 152, this Court acknowledged that La. R.S. 40:1231.8(H) (formerly La. R.S. 40:1299.47(H)) provides that a medical review panel opinion shall be admissible as evidence in a subsequently brought medical malpractice lawsuit. This Court then stated: "However, as with any other expert testimony, the medical review panel opinion is subject to review, and a trial court

may reject it as inadmissible," citing *McGlothlin*, 65 So.3d at 1227. This Court found the medical review panel opinion contained impermissible findings regarding a disputed material fact, and the trial court's error in admitting the opinion was prejudicial, warranting reversal. *Id.* at 1092.

In support of their position, defendants cite *Keller*, 362 So.3d at 403, in which the Louisiana Supreme Court found the trial court erred by excluding the panel's opinion, stating, "a medical review panel's opinion is subject to mandatory admission unless the panel exceeded its statutory authority." However, the *Keller* court distinguished its facts from the *McGlothlin* decision, in which the opinion was found to be inadmissible, stating there was no indication in *Keller* that the panel found inconsistencies in the evidence or made credibility determinations.

The caselaw indicates that while a medical review panel opinion is generally admissible, there are exceptions to its admissibility, such as when the panel exceeds its statutory authority. We must consider whether La. C.C.P. art. 966(G), precluding any direct or indirect reference to the fault of a party who has been dismissed by summary judgment, constitutes an exception to the general rule that a medical review panel opinion is admissible.

Although La. R.S. 40:1231.8(H) provides that a medical review panel opinion "shall be admissible," La. C.C.P. art 966(G) provides that no evidence of or reference to the fault of a party, who is dismissed by summary judgment, may be admitted at trial. La. C.C. art. 13 provides that "[l]aws on the same subject matter must be interpreted in reference to each other." Where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other statutes dealing with the same subject matter. *Sebble on Behalf of Estate of Brown*, 379 So.3d at 620.

In the present case, the medical review panel opinion was admitted as to the claims against Dr. Carpenter. Although the opinion reflects the medical review panel did not find any defendants were at fault, it addresses allegations of fault against these defendants. Considering the clear language of La. C.C.P. art. 966(G) and the caselaw reflecting there are exceptions to the admissibility of a medical review panel opinion, we find the trial court did not err by admitting the portion of the panel opinion pertaining to Dr. Carpenter, in accordance with La. R.S. 40:1231.8(H), and excluding the provisions pertaining to defendants who were dismissed by summary judgment, in accordance with La. C.C.P. art. 966(G).

*Assignment of Error Number Five*

In their fifth assignment of error, defendants assert the trial court erred in refusing to allow defendants to present the testimony of Dr. Dennis Occhipinti in court or to admit his discovery deposition into evidence. They claim all counsel had been notified that the deposition would be used at trial in lieu of his live testimony, and Dr. Occhipinti was unavailable. They argue that while the Sheriff was unable to serve Dr. Occhipinti with defendants' subpoena, he was served with plaintiffs' subpoena and appeared in court to testify, but he left after speaking with the trial court. Defendants also contend their counsel coordinated with Dr. Occhipinti and arranged for his testimony at trial. They aver that Dr. Occhipinti's testimony was vital to the defense, because he saw Mr. Detillieu two days after Dr. Carpenter, observed his condition and symptoms, and did not send him to the emergency room, refer him to a neurologist, or order an urgent MRI.

Plaintiffs respond that Dr. Occhipinti was free to leave without testifying, because plaintiffs released him from their subpoena. They further contend the trial

court correctly refused to admit his deposition, because he did not meet the requirements of La. C.C.P. art. 1450, as he was not "unavailable."[9]

According to defendants, Dr. Occhipinti appeared to testify on September 29, 2022, and plaintiffs objected, indicating they released him from their subpoena. Defendants contend the trial court discussed the matter at length with counsel for both sides and then decided to meet privately in chambers with Dr. Occhipinti, but neither the discussion nor the meeting in chambers was transcribed. They contend that after meeting with the trial court, without counsel present, Dr. Occhipinti left the courthouse.

The transcript of the September 29, 2022 proceedings reveals that the trial court stated:

> Since we did this in chambers I'm gonna put on the record that I spoke to Dr. Occhipinti. I told him that if he appeared he would be doing so voluntarily and he understood. I said you were released from your subpoena by the plaintiffs which basically means that the defense counsel is requesting that you appear but I want you to understand you're not being compelled to testify. If you appear you're doing it voluntarily, that's up to you. And his only questions for me was well I mean am I—is there—can they do something to me for not testifying. And I was like well, no, because if you—if you were served with a subpoena, you did not appear—I went through all that with him. If you were served with a subpoena and you don't appear I would have the power of the Court, it would be contempt power of the Court that you didn't show up pursuant to your subpoena; however, because there is no subpoena on behalf of the person who wants to call you as a witness, no, I can't sanction you. His question was can you do anything to him and I said, nope, they never have the power to do anything to a witness for not showing up for their subpoena, it's the Court that does all of that. So that was the most basic conversation that we had in the back…

---

[9] La. C.C.P. art. 1450(A)(3)(a) provides that the deposition of a witness may be used by any party for any purpose if the court finds the witness is unavailable.

A short time later, the trial court asked, "Is Dr. Occhipinti testifying?" Counsel for defendants responded that she was going to ask the court that same question. The trial court then stated:

> When he walked out he said well—he didn't say yes or no to me but I think he said, uh, I guess I'm just gonna let sleeping dogs lie is what his exact word to me. So I'm thinking that intimated to me that he was gonna comment, no, he's not testifying so…

The Code of Judicial Conduct guides and instructs judges on how to proceed in their profession. *In re: Lemoine*, 96-2116 (La. 1/14/97), 686 So.2d 837, 841. Canon 3(A)(6) references rules for ex parte communications, stating that:

> Except as permitted by law, a judge shall not permit private or ex parte interviews, arguments, or communications designed to influence his or her judicial action in any case, either civil or criminal. … Where circumstances require, ex parte communications are authorized for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits, provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication. …

The trial court participated in an ex parte communication in chambers with Dr. Occhipinti, and he left the courthouse after their conversation. According to Judicial Canon 3(A)(6), ex parte communications are allowed when they focus on scheduling, administrative purposes, or emergency matters that do not relate to the merits of the case when the judge reasonably believes no party will gain an advantage. However, in this instance, the trial judge spoke with a physician who treated Mr. Detillieu after Dr. Carpenter had released him, knowing defendants wished to call him to testify and that plaintiffs released him from their subpoena. The ex parte communication involving Dr. Occhipinti did not regard scheduling, administrative, or emergency purposes, and certainly had the potential to provide one side with an advantage. Therefore, based on Judicial Canon 3(A)(6), we find the trial court's private conversation was improper. Any conversation between the

trial court and the witness should have been on the record in the presence of counsel for the parties.

Defendants also argue they should have been allowed to use Dr. Occhipinti's deposition in lieu of testimony pursuant to La. C.C.P. art. 1450(5), because they sent a letter to plaintiffs' counsel on July 10, 2022, notifying them that they would use the deposition at trial, and plaintiffs failed to object within ten days. However, at the hearing on this issue, defendants did not make this argument. As a general rule, appellate courts will not consider issues or arguments raised for the first time on appeal. *Geiger v. State ex rel. Dept. of Health & Hosp.*, 01-2206 (La. 4/12/02), 815 So.2d 80, 86. Therefore, we will not consider defendants' argument regarding La. C.C.P. art. 1450(5) for the first time on appeal. However, considering that Dr. Occhipinti appeared to testify, but then subsequently left after meeting with the trial court in chambers, we point out that La. C.C.P. art. 1450 allows the use of an expert's deposition where "justice so requires." The trial court should have considered this provision when deciding whether to admit the deposition.

Counsel for defendants also attempted to proffer Dr. Occhipinti's deposition. However, counsel for plaintiffs argued defendants were not entitled to this proffer, because the trial court did not exclude Dr. Occhipinti's testimony. Rather, he was not bound to appear by subpoena and voluntarily decided not to appear, which does not render him unavailable for purposes of proffering his deposition. Plaintiffs' counsel further stated, "It would be like me coming in and saying, Your Honor, I got a bunch of deposition [sic] of witnesses I never intend to bring to trial, I never subpoenaed." The trial court stated:

> And all of this started because Dr. Occhipinti was here under the mistaken belief that he had been subpoenaed by defense counsel…I cleared that up, okay, 'cause I told him you understand you were released from your subpoena by the plaintiffs so if you want to testify I want you to understand you are testifying voluntarily, no one is compelling you to testify…

The trial court refused to allow defendants' counsel to proffer Dr. Occhipinti's deposition, because it had not excluded his testimony, but rather "he declined to come voluntarily." The court acknowledged that the record shows there were five unsuccessful attempts to serve Dr. Occhipinti with defendants' subpoena. Considering these circumstances, we find the trial court abused its discretion by refusing to allow defendants to proffer Dr. Occhipinti's deposition.

*Assignment of Error Number Six*

In their sixth assignment of error, defendants contend the trial court erred in refusing to allow them to present any evidence of the third-party fault of Dr. Shamsnia, Dr. Nguyen, or Dr. Occhipinti. They point out that these doctors were never named in this litigation, thus making La. C.C.P. art. 966(G) inapplicable, and that defendants alleged third-party fault in their answer. Defendants base much of their argument on the potential third-party fault of Dr. Shamsnia. They assert that Dr. Shamsnia was the on-call neurologist at LRMC on March 22, 2013, when Dr. Benton ordered a neurology consult at approximately 12:47 p.m. However, despite receiving numerous updates regarding Mr. Detillieu's deteriorating condition, he failed to come to the hospital to see Mr. Detillieu until 4:45 p.m. the next day, over 28 hours after the neurology consult was ordered, and when Mr. Detillieu was comatose.

Plaintiffs respond that defendants failed to present sufficient evidence, at trial or through proffer, to prove the elements of medical malpractice against any of these doctors. They further argue that defendants offered no evidence that there was anything Dr. Shamsnia could have done to save Mr. Detillieu's life.

On September 16, 2022, plaintiffs filed a motion in limine, seeking to preclude defendants from presenting any evidence at trial of the third-party fault of Dr. Shamsnia, Dr. Occhipinti, or Dr. Nguyen. They asserted that while defendants

listed third-party fault as an affirmative defense in their answer and alleged that these defendants caused or contributed to Mr. Detillieu's injuries in their answers to discovery, they did not plead any facts with specificity. At the hearing on September 23, 2022, plaintiffs reiterated the arguments in their motion. They further argued it was defendants' burden to prove third-party fault, which requires expert testimony, but defendants had not named any neurologist on their witness list who could testify that Dr. Shamsnia breached the standard of care.

Defendants responded that affirmative defenses do not have to be factually pled and they could cross-examine Dr. Shamsnia as to his actions, upon which the jury could infer fault. They also asserted that the witnesses already scheduled to testify, including plaintiffs' experts, could offer testimony as to the fault of these doctors. They further argued that under *Hastings*, 498 So.2d at 720, expert testimony is not required to prove that a provider who fails to respond to an emergency breached the standard of care.

When defendants' counsel asked about presenting evidence of comparative fault at trial, the trial court stated, "Well, I think you needed to name them as a cross claimant." When counsel stated they did not have to factually plead comparative fault, the trial court responded, "comparative fault means the fault between the two parties… Comparative fault is between the plaintiff and defendant. Third-party fault is somebody else, okay." The court stated that defendants had not named anyone when asserting third-party fault and did not file a cross-claim against these doctors.[10] The trial court further stated that defendants were required to have their own experts to prove third-party fault and could not rely on cross-examination of plaintiffs' experts. Finally, the court stated that because defendants did not have an expert to testify that Dr. Shamsnia, Dr.

---

[10] A cross-claim is a demand filed against a co-party. *See* La. C.C.P. art. 1071. Dr. Shamsnia, Dr. Occhipinti, and Dr. Nguyen were not parties to this lawsuit.

Occhipinti, or Dr. Nguyen breached the standard of care, they could not make such arguments at trial.

At the hearing, the trial court granted plaintiffs' motion in limine to exclude evidence of third-party fault. The trial court signed a written judgment on October 17, 2022, after trial, granting plaintiffs' motion in limine and ordering that defendants are prohibited from offering "any evidence or testimony of the third party fault of Dr. Morteza Shamsnia, Dr. Tuan Nguyen, or Dr. Dennis Occhipinti," and "any and all standard of care opinions or testimony against" these doctors.

The trial court was incorrect in stating that comparative fault applies only to parties. La. C.C. art. 2323(A) provides that the "percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty." *Keith v. United States Fidelity & Guaranty*, 96-2075 (La. 5/9/97), 694 So.2d 180, 182.

In *Amedee*, 351 So.3d at 333, the Louisiana Supreme Court stated:

> Obviously, a defendant who pleads an affirmative defense must be given the opportunity to prove that defense. Where the affirmative defense is the comparative fault of others, La. C.C.P. art. 2323 requires the trier of fact to make a determination as to the fault of all parties. It expressly states that 'the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss *shall* be determined, regardless of whether the person is a party to the action or a nonparty....' (Emphasis added). Article 2323 was enacted when the Louisiana legislature adopted our pure comparative fault system in 1980, and…it clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person…Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person.
> (Internal citations omitted.)

Plaintiffs did not file suit against Dr. Shamsnia, Dr. Nguyen, or Dr. Occhipinti. Although La. C.C.P. art. 966(G) prohibits evidence of the fault of

defendants dismissed on summary judgment, these doctors do not fall into that category.  Defendants raised third-party fault and comparative fault in their answer.  After review, we find that trial court abused its discretion by prohibiting defendants from presenting any testimony or evidence of the fault of Dr. Shamsnia, Dr. Occhipinti, or Dr. Nguyen.

*Assignment of Error Number Seven*

In their seventh assignment of error, defendants assert the trial court erred in refusing to allow them to proffer Dr. David Newman-Toker's deposition, in which he criticized Dr. Shamsnia's actions, and to make a more complete proffer of Dr. Satterlee's testimony.[11]  Plaintiffs respond that Dr. Newman-Toker's deposition does not establish the elements of a medical malpractice claim against Dr. Shamsnia, which is required to prove third-party fault.  They further argue that defendants chose not to bring Dr. Satterlee to court to put forth a testimonial proffer, but regardless, his report with his findings was admitted.

At the conclusion of trial, defendants' counsel indicated she wanted to proffer Dr. Newman-Toker's deposition reflecting criticism of Dr. Shamsnia for his delay in reporting to the hospital to evaluate Mr. Detillieu.  She reminded the court that it had ruled that she could not elicit this testimony from Dr. Newman-Toker at trial due to the court's ruling prohibiting testimony or evidence of third-party fault.  The trial court denied the request to proffer his deposition stating that it had not excluded evidence of Dr. Shamsnia's fault at the September 23, 2022 hearing and that counsel just failed to address the matter when Dr. Newman-Toker was on the stand.

The record reflects the trial court's recollection was incorrect.  At the pre-trial hearing on September 23, 2022, the trial court granted plaintiffs' motion in

---

[11] In this assignment, defendants also assert the trial court erred by refusing to allow defendants' proffer of Dr. Occhipinti's deposition.  However, this argument was previously addressed with the fifth assignment of error.

limine to exclude evidence of the third-party fault of Dr. Shamsnia and others, because defendants did not have their own expert. Therefore, in accordance with the trial court's ruling, defendants' counsel did not question Dr. Newman-Toker at trial as to his opinion on Dr. Shamsnia's conduct.

When a court excludes evidence, La. C.C.P. art. 1636 requires the court to either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. La. C.C.P. art. 1636 is mandatory, not discretionary. *Succession of Moore*, 54,338 (La. App. 2 Cir. 3/30/22), 339 So.3d 12, 27, *writ denied*, 22-973 (La. 10/4/22), 347 So.3d 859. The trial court has the discretion to receive a proffer in full when it rules against the admissibility of any evidence or to require a statement setting forth the nature of the evidence. It is error to deny a party both forms of proffer. *Id.*

Considering the foregoing, we find the trial court abused its discretion by refusing to allow defendants to proffer the portion of Dr. Newman-Toker's deposition in which he testified regarding Dr. Shamsnia's conduct or to allow them to make a statement setting forth the nature of his testimony. As to defendants' claim that the trial court should have allowed them to make a complete proffer of Dr. Satterlee's testimony, we have found that the trial court abused its discretion by precluding Dr. Satterlee from testifying at trial. However, defendants' counsel was permitted to make a statement regarding his expected testimony, which was sufficient to comply with La. C.C.P. art. 1636(A).

*Assignment of Error Number Eight*

In their eighth assignment of error, defendants argue the trial court erred in finding Dr. Nguyen was qualified to testify regarding the standard of care for emergency medicine and causation. They claim he did not meet the requirements of La. R.S. 9:2794(D) for qualification as an expert in emergency medicine.

Plaintiffs respond that Dr. Nguyen was qualified to testify about the standard of care for emergency medicine and causation, because he worked in an emergency room for three years and had education, training, and clinical experience in diagnosing and treating strokes in an emergency department.

As previously stated, La. R.S. 9:2794(D)(1) provides that a physician may only qualify as an expert on the applicable standard of care in a medical malpractice action if: 1) he is practicing medicine when the testimony is given or was practicing medicine at the time of the claim; 2) he has knowledge of the standard of care; 3) he is qualified based on training and experience; 4) he is licensed to practice medicine or is a graduate of an accredited medical school.

Where medical disciplines overlap, it is appropriate to allow a specialist in one field to give expert testimony as to the standard of care applicable to areas of the practice of medicine common to both disciplines. *Pertuit*, 170 So.3d at 1110; *Bryde v. Lakeview Regional Medical Center*, 19-166 (La. App. 5 Cir. 12/11/19), 284 So.3d 686, 692. A specialist's knowledge of the requisite subject matter, rather than the specialty or subspecialty within which the specialist practices, determines whether a specialist may testify as to the degree of care which should be exercised. *Id.*; *Richardson*, 245 So.3d at 143.

In his video deposition, Dr. Nguyen testified that he is board-certified in family medicine. He did not complete a residency or formal training in emergency medicine, and he has never been board certified in emergency medicine or eligible to apply for board certification. He worked in an emergency room for three years but admitted he did not have the qualifications to work in the emergency room of a trauma facility such as LRMC. He was not actively practicing emergency medicine at the time of either the alleged malpractice or trial.

Although medical disciplines can overlap and a specialist's knowledge determines whether he is qualified to testify as an expert in a particular field, the

record before us reveals that Dr. Nguyen was not qualified to testify as an expert on the standard of care for emergency medicine. Accordingly, we find that while Dr. Nguyen could testify as to his observations and treatment of Mr. Detillieu, the trial court abused its discretion by allowing him to testify as to the standard of care for emergency medicine.

*Assignment of Error Number Nine*

In their ninth assignment of error, defendants argue the trial court erred by allowing plaintiffs to present cumulative testimony from four witnesses-- Dr. Nguyen, Dr. Shamsnia, Dr. Newman-Toker, and Dr. Woolard-- that Dr. Carpenter breached the standard of care. They contend that any probative value of the standard of care testimony of three of these witnesses was duplicative, cumulative, and unnecessary.

Plaintiffs respond that because these doctors did not have the same specialties and saw Mr. Detillieu at different times, their testimony provided different perspectives on the same evidence and was not cumulative.

La. C.E. art. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. Cumulative evidence is generally considered to be additional evidence of the same kind tending to prove the same point as other evidence already given. *State v. Stockstill*, 19-1235 (La. 10/1/20), 341 So.3d 502, 508.

Considerations of "undue delay" and "waste of time" permit a judge to exclude additional testimony as cumulative. *Lovecchio v. Romain*, 19-0779 (La. App. 4 Cir. 3/25/20), 364 So.3d 202, 210, *writ denied*, 20-458 (La. 9/8/20), 301 So.3d 30. The admission of cumulative evidence is largely within the trial court's

discretion. *Langlinais v. Dearman*, 07-44 (La. App. 3 Cir. 5/30/07), 957 So.2d 945, 951.

The doctors at issue did not have the same specialties or perspectives. Also, some treated Mr. Detillieu and some did not. After review, we cannot say the trial court abused its discretion by allowing each of these doctors to testify that Dr. Carpenter breached the standard of care.[12]

*Assignment of Error Number Ten*

In their tenth assignment of error, defendants argue the trial court erred by allowing Dr. Robert Woolard, who was accepted as an expert in emergency room medicine including diagnosis of stroke and standard of care, to testify to opinions outside of his specialty. Specifically, they assert that in his deposition, Dr. Woolard stated he was not an expert in "reading neuroimaging" and had no opinion on whether any intervention by Dr. Carpenter on March 17, 2013 would have made a difference. At trial, however, he testified that if imaging and a neurology consult had been done on March 17th, Mr. Detillieu likely would not have suffered a massive stroke. Plaintiffs respond that defendant failed to preserve this issue for appeal.

In order to preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence and state the reasons for the objection. *Matthews v. Breaux,* 04-958 (La. App. 5 Cir. 2/15/05), 896 So.2d 1146, 1150. The failure to make a contemporaneous objection in the trial court waives the right of a party to complain about the ruling on appeal. *Id.*; *Anderson v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. College*, 06-153 (La. App. 5 Cir. 10/17/06), 943 So. 2d 1198, 1201.

---

[12] In this assignment, defendants do not challenge these doctors' qualifications to testify as to the standard of care; rather, they merely assert the testimony was cumulative.

The record does not reflect that defendants' counsel objected at the time of this particular trial testimony. In their appeal brief, defendants challenge Dr. Woolard's statement providing that if imaging or a neurology consult had been performed on March 17th, Mr. Detillieu likely would not have had a massive stroke. There was no objection to this testimony. The record shows that counsel for defendants objected when counsel for plaintiffs asked Dr. Woolard if it was more probable than not that the stroke that killed Mr. Detillieu was occurring when he saw Dr. Carpenter in the emergency room. After discussion between counsel for both sides and the trial court, plaintiffs' counsel then asked:

> ...if Mr. Detillieu was having a stroke on March 17, 2013, when he may or may not have been seen by Dr. Carpenter, and his cause of death was a stroke, do you think the most likely— do you think that the stroke that was happening on the 17th was the same stroke that killed him.

Dr. Woolard replied:

> I think it's a progression of the same stroke, the same problem. And, again, you know, I'm an emergency physician, so I'm not a neurologist. And I think the neurology expert can explain this maybe a little better than I can. But there's two blood vessels in the backside of the circulation. They're called vertebral arteries. And you can get disease in arteries anywhere. And so if you have disease in those arteries, they can send small flakes of clot and other things off and cause minimal symptoms to start with and then at another point go on to completely clot or send a very large clot up to the brain. And I think that's exactly what happened. I think it was a continuation of the same process. And, yes, at some point that clot becomes so massive that it causes death.

Because defendants did not object to the question asserted in their brief, this issue was not preserved for appeal. Nevertheless, we find no abuse of the trial court's discretion in allowing Dr. Woolard to testify as set forth above.

*Assignment of Error Number Eleven*

In their eleventh assignment of error, defendants argue the trial court erred by allowing testimony that contradicted Dr. Satterlee's interpretation of the March 21st MRI, where the claims against him had been dismissed on summary judgment,

in violation of La. C.C.P. art. 966(G). They point to Dr. Blitz's testimony that the March 21st MRI showed strokes, but it is difficult to determine if they were chronic or acute, because diffusion weighted imaging was not used. They also point to Dr. Newman-Toker's testimony in which he disagreed with Dr. Satterlee's interpretation that the March 21st MRI showed only chronic strokes, and opined that diffusion weighted imaging should have been obtained.

Our review of the testimony at issue reveals that defendants did not object at the time the questions complained of were posed to Dr. Blitz or Dr. Newman-Toker. Additionally, as pointed out by plaintiffs, defendants' counsel posed similar questions to Dr. Newman-Toker, specifically referencing Dr. Satterlee and his report. Because defendants did not make a contemporaneous objection at the time of this testimony, defendants did not preserve this issue for appeal.

*Assignment of Error Number Twelve*

In their twelfth assignment of error, defendants argue the trial court erred in refusing to allow defendants to impeach Cheryl Detillieu's trial testimony with her contradictory deposition testimony. Defendants cite La. C.C.P. art. 1450 in support of their argument. Plaintiffs respond there are no grounds to admit such testimony under La. C.E. arts. 401, 402, and 403, and therefore, the trial court did not abuse its discretion by prohibiting it.

At trial, Ms. Detillieu testified that Dr. Shamsnia was "very concerned" about Mr. Detillieu and he "spent a lot of time in the room explaining to me what was going on and what he felt had transpired and told me he was going to do everything he could to help my husband." Counsel for defendants sought to introduce, for impeachment purposes, the portion of Ms. Detillieu's deposition in which she stated, "I was very concerned about the fact that a neurologist [Dr. Shamsnia] did not show up until he [Mr. Detillieu] stopped breathing."

La. C.C.P. art. 1450(A)(1) provides that any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. *Walley v. Vargas*, 12-22 (La. App. 1 Cir. 9/21/12), 104 So.3d 93, 101. The trial court has much discretion under La. C.C.P. art. 1450 in determining whether to allow the use of a deposition at trial. *Id.*; *Simms v. Progressive Insurance Co.*, 38,804 (La. App. 2 Cir. 9/29/04), 883 So.2d 473, 481, *writ denied*, 04-2871 (La. 1/28/05), 893 So.2d 78.

After review of both the trial testimony and the deposition testimony, we find the trial court abused its discretion by denying defendants' request to use Ms. Detillieu's deposition to impeach her. Ms. Detillieu's testimony at trial indicating that Dr. Shamsnia was very concerned about her husband is inconsistent with her deposition testimony that she was concerned Dr. Shamsnia had not shown up to treat her husband until he stopped breathing.

We have reviewed the first twelve assignments of error and found multiple errors in the trial court's evidentiary rulings. If a trial court commits consequential error by denying the jury relevant, admissible evidence, the fact-finding process is interdicted, and the verdict is tainted. *LaBauve v. LAMMICO*, 21-763 (La. 4/13/22), 347 So.3d 724, 732. When a trial court's ruling is both erroneous and consequential, a remand for new trial is not always necessary if the court of appeal has the complete record before it. *Id.* at 733. However, when necessary to reach a just decision and to prevent a miscarriage of justice, an appellate court should remand the case to the trial court pursuant to La. C.C.P. art. 2164, rather than perform a *de novo* review. *Melerine v. Tom's Marine & Salvage, LLC,* 20-571 (La. 3/24/21), 315 So.3d 806, 822. In cases where the improper exclusion of expert testimony permeates multiple aspects of the case and has the potential to affect how the jury views and weighs other evidence, there is a requirement that the matter must be retried. *LaBauve*, 347 So.3d at 733.

In *Landry v. City of Mandeville*, 21-1362 (La. App. 1 Cir. 4/27/22), 342 So.3d 337, 347, *writ denied*, 22-828 (La. 9/27/22), 347 So.3d 155, citing *Lovecchio*, 364 So.3d at 209, the Court stated:

> Cumulatively, 'errors in evidentiary rulings, coupled with other improper circumstances occurring at trial, may be so prejudicial as to deprive the parties of a fair trial, and thus may constitute reversible error, even if none of the errors considered alone would be sufficient to rise to the level of reversible error.'

We have found the trial court abused its discretion by excluding relevant, admissible evidence in several rulings. These errors were consequential, interdicted the fact-finding process, and tainted the jury's verdict. The right of trial by jury in civil cases is granted by our law, it is the courts' duty to protect that right and give it meaning and effectiveness. *Said v. Federated Rural Elec. Ins. Exch.*, 21-78 (La. 4/20/21), 313 So.3d 1241, 1243.[13] Based on these circumstances, we must remand this matter for a new trial, as it is necessary to reach a just decision and to prevent a miscarriage of justice.

## Assignment of Error Number Thirteen

In their thirteenth and final assignment of error, defendants argue the trial court erred in awarding costs that were not proven, are excessive, and/or are not legally recoverable. Considering our decision to vacate the trial court's judgment October 11, 2022 judgment on the merits and remand for a new trial, we must also vacate the November 29, 2022 judgment ordering Dr. Carpenter and LAMMICO to pay $215,058.98 in costs.

## **DECREE**

For the reasons stated above, we vacate the trial court's October 11, 2022 judgment, rendered in accordance with the jury verdict, and remand for a new trial.

---

[13] In *Said*, 313 So.3d at 1243, the Court found that the applicant, who had exercised his right to trial by jury, was denied substantial justice when the jury was denied the benefit of the local treating physicians' complete testimony, and therefore, the ends of justice would be served by remanding the case for a new trial.

We further vacate the trial court's November 29, 2022 judgment against defendants for costs.

**<u>JUDGMENTS VACATED; REMANDED</u>**

CHERYL DETILLIEU, ET AL.          NO. 23-CA-226

VERSUS                      FIFTH CIRCUIT

LOUISIANA MEDICAL MUTUAL     COURT OF APPEAL
INSURANCE COMPANY, ET AL.

STATE OF LOUISIANA

**<u>MARCEL, J., CONCURS WITH REASONS</u>**

I agree with the majority that the trial court erred by rejecting William Troxler, M.D. as an expert in emergency medicine and accepting Dr. Nguyen as an expert in emergency medicine. This case involves the actions and inactions of appellant, Dr. Shaun Carpenter, an emergency room physician, in his treatment of Alfred Detillieu on March 17, 2013. As such, the admissibility of evidence of the standard of care applicable to emergency room physicians is at the core of the questions to be determined by the trier of fact. Accepting expert medical testimony on the standard of care applicable to emergency room physicians from an unqualified physician and rejecting expert medical testimony from a physician possessing qualification were consequential in this case and warrant vacating the trial court's judgments of October 11, 2022 and November 29, 2022.

However, I respectfully disagree with the majority's finding that the trial court abused its discretion by excluding trial testimony of former defendants dismissed by summary judgment, including Dr. Jerry Satterlee. In his second assignment of error, appellant contends the trial court erred in refusing to allow testimony from any treating physician who was previously a party to the litigation and was dismissed by summary judgment. Appellant's eleventh assignment of error asserts the trial court erred by allowing testimony contradicting Dr. Satterlee's interpretation of the March 21st MRI because the claims against him had been dismissed on summary judgment. For reasons which follow, I do not find error in excluding testimony from physicians dismissed as defendants in the case

by summary judgment or in allowing opinion testimony regarding the March 21, 2013 MRI scan.

Trial court evidentiary rulings are not to be disturbed on appeal absent a clear abuse of discretion. *Moonan v. Louisiana Med. Mut. Ins. Co.*, 16-113 (La. App. 5 Cir. 9/22/16), 202 So. 3d 529, 534, writ denied, 2016-2048 (La. 1/9/17), 214 So. 3d 869. Reversal is warranted where the appellate court determines the complained-of ruling was erroneous and that error, in context of the entire record, has a substantial effect on the outcome of the case. *Id.* The burden of proving both elements is with the complainant. *Id.*

This medical malpractice case arises from the death of Alfred Detillieu on March 24, 2013 following a series of strokes in the cerebellum. In their petition for damages, his widow and two children named seven healthcare providers as defendants – Shaun Carpenter, M.D., Arthur Satterlee, M.D., Camille Bitar, M.D., John Simon, M.D., Michael Hall, M.D., Luis Alvarado, M.D., Lakeview Regional Medical Center, and Louisiana Medical Mutual Insurance Company ("LAMMICO"). Plaintiffs alleged that each breached their respective standard of care which caused their damages.

The named individual defendants were physicians who treated or performed medical services to Mr. Detillieu over the seven days before his death. Dr. Carpenter treated Mr. Detillieu in the emergency room at Lakeview Regional Medical Center on March 17, 2013. Dr. Satterlee interpreted an MRI brain scan conducted on Mr. Detillieu on March 19, 2013. Dr. Alvarado, Dr. Simon, and Dr. Bitar treated Mr. Detillieu at Lakeview Regional Medical Center between March 22, 2013 and March 23, 2013. Dr. Hall interpreted an MRI brain scan performed on Mr. Detillieu on March 22, 2013. Each defendant answered the petition with

general denials; however, answers filed by Drs. Satterlee, Carpenter, Bitar, and Simon also asserted the affirmative defense of third-party fault.[1]

Before filing their petition, plaintiffs submitted claims of malpractice against each of the aforenamed healthcare providers to a medical review panel in accordance with law. Members of the medical review panel were Richard Vanderbook, M.D., Evangelos Sotiropoulos, M.D., and William Troxler, M.D. In its report, the medical review panel found the named healthcare providers delivered services to Mr. Detillieu in accordance with their respective standards of care.

During the pre-trial phase of the proceedings below, each defendant filed a motion for summary judgment. Plaintiffs filed an opposition to each motion while co-defendants asserting the affirmative defense of third-party fault did not file their opposition to any motion for summary judgment. In the hearings on motions filed by Dr. Hall, Dr. Bitar, Dr. Simon, Lakeview Regional Medical Center, Dr. Alvarado, and Dr. Satterlee, plaintiffs withdrew their opposition and consented to entry of summary judgment dismissing each from the action. Dr. Carpenter's motion for summary judgment was denied, leaving he and his insurer, LAMMICO, as the only remaining defendants in the action.

Plaintiffs' cause of action against Dr. Carpenter arises from his treatment of Mr. Detillieu on March 17, 2013. Following his examination and diagnoses of vertigo and anxiety, Dr. Carpenter discharged Mr. Detillieu. Plaintiffs' petition alleges that Dr. Carpenter, as an emergency room physician, breached the standard of care by failing to order a head "MRI or CT scan which would have confirmed Mr. Detillieu's acute cerebellar stroke."

---

[1] Appellant's answer pleading the affirmative defense of third-party fault does not identify the individual or entity whose fault caused or contributed to damages alleged by plaintiff and does not contain specific allegations of negligent conduct by another individual or entity.

Dismissal of a party by summary judgment invokes application of La. C.C.P. art. 966(G) to the trial of the action. Under its broad language, Article 966(G) contains three prohibitions: (1) The party dismissed by summary judgment shall not be considered in any subsequent allocation of fault; (2) Evidence to establish the fault of the party dismissed by summary judgment is inadmissible at trial; and (3) Direct or indirect reference to the fault of a party dismissed by summary judgment is prohibited at trial. The scope of those prohibitions extends to non-parties dismissed by summary judgment as well.[2]

Prohibitions of La. C.C.P. art. 966(G) present challenges for the trial court in managing and controlling the mode of interrogating and cross-examining witnesses in trial. As applied to the trial of this case, Article 966(G) precludes any party or person from directly or indirectly reference the fault of Arthur Satterlee, M.D., Camille Bitar, M.D., John Simon, M.D., Michael Hall, M.D., Luis Alvarado, M.D., or Lakeview Regional Medical Center. *Fault* is defined as the intentional or negligent failure to maintain some standard of conduct when that failure results in harm to another person. Black's Law Dictionary (8ᵗʰ ed. 2004). Liability, under Louisiana law, encompasses not only fault, but causation and damages which are legally compensable. *Hall v. Brookshire Brothers, Ltd.*, 02–2404 (La.6/27/03), 848 So.2d 559, 567. Determination of fault in a medical malpractice claim requires proof of three elements by a preponderance of the evidence: (1) the standard of care applicable to the tortfeasor; (2) the tortfeasor breached that standard of care; and (3) that there was a causal connection between the breach and resulting injury. La. R.S. 9:2794.

---

[2] Establishing fault of a principal is the only exception to the prohibition against admission of evidence and direct or indirect reference to fault of a party dismissed by summary judgment; this exception is inapplicable to the prohibition against allocation of fault to a party dismissed by summary judgment.

The subject of trial testimony from former defendants dismissed by summary judgment who provided healthcare services to Mr. Detillieu between March 18, 2013 and the date of his death on March 24, 2013 was addressed by the trial court in its hearing on plaintiffs' motion in limine on January 24, 2022. Plaintiffs motion in limine requested an order excluding evidence of judgments rendered in favor of those former defendant physicians based on La. C.E. arts. 402 and 403. Defendant opposed the motion on grounds that all medical treatment received by Mr. Detillieu between March 15, 2013 and March 24, 2013 was "extremely relevant and highly probative to the issues of causation …" After hearing, the trial judge issued judgment on February 1, 2022 containing the following:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion in Limine to Exclude Inadmissible Evidence and Testimony filed by Plaintiffs be and is hereby GRANTED, IN PART, specifically that Defendants are prohibited from offering any evidence or testimony that Defendants, Dr. Arthur Satterlee, Dr. John Simon, Dr. Luis Alvarado, Dr. Camille Bitar, Dr. Michael Hall and/or Lakeview Regional Medical Center, were dismissed from this action via Motions for Summary Judgment shall be redacted prior to presentation to the Jury.

Thereafter, prior to trial, plaintiffs filed a second motion in limine concerning testimony and evidence regarding dismissed defendants. According to the September 23, 2022 hearing transcript, filing of the motion was precipitated by Dr. Carpenter's reported intention to call dismissed defendants as trial witnesses and to use medical review panel submissions of dismissed defendants in his examination and cross-examination of other trial witnesses. After vigorous argument from both sides, the trial judge ordered that no dismissed defendant would be permitted to testify at trial, reasoning: "(H)aving any of those dismissed defendants come and testify runs the risk, especially when there are going to be arguments that other people are at fault and not the named defendant, it runs the

risk that the jury would infer from the testimony that we have offered evidence that we cannot offer under 966(G)."

Shortly after trial in the instant case, the Louisiana Supreme Court addressed application of comparative fault under La. C.C. art. 2323 in light of La. C.C.P. art. 966(G). *Amedee v. Aimbridge Hosp. LLC*, 2021-01906 (La. 10/21/22), 351 So. 3d 321, 334. In holding that a defendant is permitted to appeal the summary judgment dismissal of a co-defendant, the supreme court analyzed the Article 966(G) prohibition against direct or indirect reference to fault of a party or non-party dismissed from the action by summary judgment and comparative fault defenses under Article 2323. *Id.* After reviewing the legislative history and operation of the two articles, the supreme court concluded:

> As a practical matter, because a dismissed party's fault can neither be submitted to the jury nor included on a jury verdict form, it seems rather obvious that **no reference should be made to a dismissed party during a trial**. It also seems readily apparent that a defendant's reference to a dismissed party at trial would produce no actual consequences, given that its fault would never reach the jury. Thus, the objective of the 2015 revision is unclear. We can only deduce that, in amending the article in 2015, **the legislature intended to prevent potential jury confusion by expressly prohibiting references to a dismissed defendant whose fault would never actually be presented to the jury**. *Id.* (emphasis added)

In the instant case, after extensive pre-trial motion proceedings, the trial court exercised its discretion for managing and controlling the mode of interrogating and cross-examining witnesses in light of Article 966(G) by prohibiting either side from calling defendants dismissed by summary judgment as witnesses at trial. The trial court's decision is consistent with the conclusion reached by the Louisiana Supreme Court in *Amedee.* As such, I do not find the trial court clearly abused its discretion in refusing to allow testimony from any treating physician who was a defendant dismissed by summary judgment in this action.

In the eleventh assignment of error, appellant contends the trial court erred by permitting testimony which contradicts Dr. Satterlee's interpretation of the March 21, 2013 MRI. Appellant refers to the trial testimony of plaintiffs' witness Ari Blitz, M.D., who was accepted by the trial court as an expert in the fields of neuroradiology and stroke. In review of the transcript, I do not find appellant's description of Dr. Blitz's testimony as contradictory of Dr. Satterlee's interpretation to be an accurate characterization.

During his direct examination, Dr. Blitz was presented with images from the five scans of Mr. Detillieu's brain in March 2013. Radiologists who interpreted each scan and their respective reported impressions were not identified or discussed on direct examination. Among the films reviewed by Dr. Blitz was the March 21, 2013 MRI scan performed at Delta Imaging and interpreted by Dr. Satterlee. Also reviewed were two scans performed on March 22, 2013 and two scans performed on March 23, 2013 – none of which were interpreted by Dr. Satterlee.

Dr. Blitz opined that each scan depicted strokes in the cerebellum. Regarding the March 21, 2013 MRI, Dr. Blitz testified he could not confidently classify the strokes as chronic, acute, or hyperacute because that scan did not include diffusion weighted imaging. Rather, Dr. Blitz opined the five scans reviewed together demonstrated that Mr. Detillieu was experiencing acute strokes in his cerebellum when he was examined by Dr. Carpenter on March 17, 2013. He offered no opinion regarding the applicable standard of care or breach of that standard by appellant or any dismissed defendant physician. However, on cross-examination, appellant posed the question to Dr. Blitz whether he agreed with Dr. Satterlee's report of the March 21, 2013 MRI scan. This was a foundational question for evidence running afoul of Article 966(G).

Appellant contends he was prejudiced by disallowing testimony from Dr. Satterlee to contradict Dr. Blitz's opinion of the March 21, 2013 MRI films. Testimony by Dr. Satterlee for the purpose of rebutting Dr. Blitz's opinion of the March 21, 2013 MRI scan, without addressing testimony regarding the other four scans, would be limited contradictory evidence. Conversely, permitting testimony from Dr. Satterlee regarding his finding that Mr. Detillieu's strokes were chronic inherently presents the jury with a question of his fault.

The trial court observed in its ruling that the defense was not precluded from presenting expert testimony regarding the five imaging scans of Mr. Detillieu's brain from a witness other than a physician dismissed on summary judgment. I agree. Under the circumstances presented in this case, exclusion of witnesses pursuant to Article 966(G) does not prohibit a defendant from presenting testimony of other experts to counter the plaintiff's expert witness, subject to the limitations on all witnesses in referring to potential fault of Dr. Satterlee. Considering that Dr. Satterlee was a defendant dismissed by summary judgment, and further considering the previously discussed rationale for excluding testimony from all dismissed defendants, I do not find the trial court clearly abused its discretion in disallowing Dr. Satterlee's testimony or in allowing testimony from Dr. Blitz. However, for reasons set forth herein, I concur with the majority's decision to vacate the trial court's judgments of October 11, 2022 and November 22, 2022, and to remand for a new trial.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 9, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-226

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)

ANDY J. DUPRE (APPELLEE)
DEBORAH DEO GRACIAS TRAHAN
(APPELLANT)

HUGO L. CHANEZ (APPELLEE)
TONYA K. GALLASPY (APPELLANT)

MONICA C. SANCHEZ (APPELLEE)
SARAH J. L. CHRISTAKIS (APPELLEE)

### MAILED

ASHLEY L. PAGE (APPELLEE)
JEFFREY A. MITCHELL (APPELLEE)
RYAN M. GINN (APPELLEE)
ATTORNEYS AT LAW
3850 NORTH CAUSEWAY BOULEVARD
SUITE 1500
METAIRIE, LA 70002

CONRAD MEYER (APPELLEE)
ATTORNEY AT LAW
ONE GALLERIA BOULEVARD
SUITE 1100
METAIRIE, LA 70001