CHAISSON, J.
In this medical malpractice suit, Noemie I. Moonan and her son Michael Andrew Moonan, the wife and son of Andrew Vincent Moonan, III, respectively, appeal a. final judgment rendered in favor of Dr. Frank J. Monte and his insurer, Louisiana Mutual Medical Insurance Company, arid the subsequent denial of the Moonans’ motion for new trial. For the following reasons, we affirm both the trial court’s final judgment and the denial of the motion for new trial.
FACTS AND PROCEDURAL HISTORY
On Saturday, October 17, 2009, Andrew Moonan fell while at his home. After calling 911 for emergency services, Mr. Moo-nan was taken by ambulance to the emergency room at East Jefferson General Hospital. X-rays showed that Mr. Moonan suffered two fractured ribs. He was discharged later that day with instructions to return to the emergency room if his condition changed and to follow up with his primary care physician, Dr. Monte, within the next two to four days. Mr. Moonan was driven home by his wife and a friend, Mr. Bowdre Banks, who helped place him in bed,' where he remained for the next four days. During this period, Mr. Moonan made multiple phone calls to-his doctors, including his cardiologist, Dr. Nicholas Pappas, and Dr. Monte. Around 5:00 PM on the evening of October 20th, Mr. Moo-' nan placed an after-hours phone call to Dr. Monte at which time Mr. Moonan requested to return to the hospital. Mr. Moonan did not return to the hospital, but instead remained in bed until October 21st, when Mr. Banks and an off-duty EMT technician got him out of bed and walked him to the restroom and then to a recliner. On October 22nd, Mr. Banks was assisting Mr. Moonan with walking when Mr. Moo-nan collapsed. Emergency 911 services were again called, and Mr. Moonan was taken to University Hospital where he died on October 23rd. The autopsy revealed that Mr. Moonan died of a pulmonary embolism.
Less than a year after Mr. Moonan’s death, Mrs. Moonan and her son, Michael, filed a complaint with the Louisiana Division of Administration for medical malpractice against Dr. Monte. After a review of the evidence, the Medical Review Panel unanimously determined that Dr. Monte was not negligent and did not breach the standard of care in his treatment and communications with Mr. Moonan. Subsequent to the medical review panel’s determination, on November 28, 2012, the Moonans filed suit against Dr. Monte (and his insur.er) for medical malpractice in the 24th Judicial District Court of the Parish of Jefferson. In their suit they alleged that Dr. Monte breached the standard of care in multiple ways, including: (1) failing to inform Mr. Moonan of the risks associated with his immobility, including the risk of blood clots and pulmonary embolism; (2) allowing his medical technologist, Susan Moss, to tell Mrs. Moonan that Mr. Moo-nan’s condition was not serious and he needed only to “get up and walk”; and (3) by failing to instruct Mr. Moonan to return to the emergency room for testing and evaluation. The Moonans also alleged that Dr. Monte’s negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
*532 The case proceeded to a four-day jury trial on March 23 to 26, 2016. In presenting their case, the Moonans relied primarily on the testimony of Mrs. Moonan and Mr. Banks, both of whom testified about the October 20th phone call between Mr. Moonan and Dr. Monte. They testified that Mr. Moonan called Dr. Monte begging for permission to go to the emergency room because, as they understood it, their medical insurance plan would not cover the cost of ambulatory services to the emergency room unless the insured reasonably believed the situation to be an emergency or had a prior referral to the emergency room by his primary care physician. Mrs. Moonan and Mr. Banks witnessed Mr. Moonan making this call; however, both witnesses acknowledged that they could not hear anything said by Dr. Monte, that they did not know all of what Dr. Monte said to Mr. Moonan, and that Mr. Moonan did not recount Dr. Monte’s words to them except to say that Dr. Monte would not authorize him to return to the hospital and the doctor advised him to get up and walk. Neither witness recalls Mr. Moonan using the words “emergency room.” Mrs. Moo-nan also testified that Mr. Moonan complained to Dr. Monte of shortness of breath, a risk factor that should have alerted the doctor to Mr. Moonan’s emergency condition.
In support of their testimony, the Moo-nans introduced as evidence a timeline chronologizing the events in the days leading up to Mr. Moonan’s death. Mrs. Moo-nan created this timeline some weeks after her husband’s death for her own personal recollection and not in anticipation of litigation. The Moonans also introduced and had read to the jury the deposition of Dr. William Nelson Grant, III, a doctor of internal medicine, who believed Dr. Monte had breached the standard of care based on the facts of this case. Dr. Grant also testified that he had never met Dr. Monte or Mr. Moonan and that all of his knowledge of the case was second-hand.
For their case, the defendants relied on the testimony of Dr. Monte, Dr. Nicholas Pappas, and Dr. Richard Diechmann, á member of the medical review panel.
Regarding the October 20th phone call, Dr. Monte testified that Mr. Moonan called requesting direct admission to the hospital, not permission to return to the emergency room as claimed by the Moo-nans. Dr. Monte stated that he told Mr. Moonan that he could not be directly admitted to the hospital without an in-person evaluation, and instructed Mr. Moonan to come to his office or go to the emergency room for an evaluation. According to Dr. Monte, Mr. Moonan did not make any complaints such as shortness of breath that would alert him that Mr. Moonan required immediate emergency medical care. Dr. Monte also testified that, over the many years of acting as his primary care physician, Mr. Moonan had a history of failing to follow his advice, including for many years refusing to take blood-thinner medication.
Dr. Pappas testified that he also treated Mr. Moonan for many years, and that he communicated with Dr. Monte regularly about Mr. Moonan. Dr. Pappas had also recommended blood-thinning medication to Mr. Moonan as a treatment for his heart-related conditions, but Mr. Moonan declined to take the medication. Dr. Pappas also spoke to Mr. Moonan over the phone on October 19th, when Mr. Moonan called with, complaints of heart palpitations after taking pain medication. Dr. Pappas recommended an immediate electrocardiogram (EKG); however, Mr. Moonan declined to come into the office, claiming he was in too much pain. During that phone call, Dr. Pappas did not hear Mr. Moonan make any complaints such as shortness of breath *533 that would have alerted him to any emergency condition that Mr. Moonan was experiencing.
Dr. Diechmann, a doctor of internal medicine who served as a member of the medical review panel, testified that. Dr. Monte did not breach the standard of care in his treatment or communications with Mr. Moonan. He testified that Dr. Monte’s instructions to either report to the emergency room or to Dr. Monte’s office for evaluation were reasonable and the correct standard of care. He explained that physicians are not trained to offer diagnoses over the telephone because they are at a great disadvantage not being able to evaluate the patient. Dr. Diechmann also testified that a patient does not need the approval of his doctor to go to the emergency room, and a physician does not have to authorize a phone call to 911.
The trial concluded with the jury reaching a unanimous verdict in favor of Dr. Monte. The trial court issued a final judgment on April 20, 2015, accepting the jury’s verdict. The Moonans subsequently filed a motion for new trial, which the trial court denied on June 15, 2015. It is from these judgments that the Moonans appeal.
On appeal, the Moonans raise two assignments of error:
1. The trial judge erred in allowing Dr. Diechmann to testify as a retained expert in violation of the court’s Scheduling Order, which required experts to furnish a report 90 days prior to trial.
2. The trial judge erred in redacting, with a black marker, two parts of the timeline of Mrs. Moonan, which contained crucial information at the trial regarding the credibility of the parties.
We address each of these assignments in turn.
DISCUSSION

Admission of Panel Member’s Expert Testimony

La. C.C.P. art. 1551 provides the trial court with' great discretion in implementing pre-trial orders and ensuring that the items of the pre-trial order are enforced. Robinson v. Apria Healthcare, Inc., 38,438 (La.App. 2 Cir. 5/27/04), 874 So.2d 418, 426. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the ease. Id. When a party’s attorney fails to obey a pre-trial order, the court, on its own motion or on the motion of a party, may make such orders as are just, including an order prohibiting the disobedient party from introducing designated matters into evidence. La. C.C.P. art. 1551(C); La. C.C.P. art. 1471(2). Furthermore, while the trial judge has great discretion in deciding whether to receive or refuse testimony objected to on the grounds of failure to abide by the pre-trial order, any doubt must be resolved in favor of receiving the information. Alix v. E-Z Serve Corp., 03-24 (La.App. 5 Cir. 4/29/03), 846 So.2d 156, 158. Absent an abuse of discretion, the decision of the court will be upheld. Id.
 After a review of the record, we find no abuse of discretion in the trial court’s decision to allow Dr. Diechmann, a member of the medical review panel, to testify at trial as an expert witness even .though the defense did not provide an expert report of the kind contemplated by La. C.C.P. art. 1425. The purpose of such an expert report is to provide the opposing party with advanced notice of the expert’s opinions and the basis and reasons therefore and the data or other information considered by the witness in forming the opinions. Facts in the record indicate that the Moonans were aware of Dr. Diech-mann’s opinion and what he would testify *534 to at trial. The Moonans listed Dr. Diech-mann. on their own pre-trial witness list and in their inserts to the pre-trial order. Their attorneys also met with Dr. Diech-mann immediately following the report of the medical review panel, and at Dr. Diechmann’s office prior to trial. In them attorney’s own words, “[w]e knew everything about Dr. Diechmann. We knew to a T exactly what his opinion was in this case...”
The Louisiana Supreme Court, in reviewing of the provisions of the Louisiana Medical Malpractice Act (“LMMA”), which allows members of the medical review panel to be called by either party at trial, has stated that there is nothing in the LMMA which prevents a party in a medical malpractice proceeding from retaining a panel member as an expert at the trial of the matter. Medine v. Roniger, 03-3436 (La. 7/2/04), 879 So.2d 706, 713. Furthermore, the provisions of the LMMA do not restrict the testimony of the panelists once their duties as members of the panel have been discharged and the panel’s written opinion has been rendered. Id. The Moo-nans’ assignment of error regarding Dr. Diechmann being allowed to testify at trial is without merit.

Redacting Portions of Plaintiff’s Timeline

At trial, defendants made an oral motion in limine to exclude as hearsay the entire timeline confected by Mrs. Moonan some weeks after her husband’s death. The trial court allowed the introduction of the timeline, but only after redacting two statements therein, both related to the October 20th phone call in which Mr. Moo-nan allegedly requested admission to the hospital: (1) “Dr. Monte refused, told him he just needed to get up and walk,” and (2) “I have no way of knowing if Andy could have been saved had Dr. Monte not refused his going to the hospital on Tuesday of that week, only a Medical Doctor can make some determination but I need to know for closure and for Andy. It’s the least I can do for him.” The Moonans argue that these statements should not' have been redacted from the timeline because they are not hearsay under La. C.E. art. 801(D)(1)(b), which provides that a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication.
The trial court is granted broad discretion in its evidentiary rulings, which are not to be disturbed on appeal absent a clear abuse of discretion. Fields v. Walpole Tire Serv., L.L.C., 45,206 (La.App. 2 Cir. 5/19/10), 37 So.3d 549, 561. A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Ins. Grp., 00-0261 (La. 2/2/00), 753 So.2d 841. On appeal, the court must consider whether the complained-of ruling was erroneous and whether the error prejudiced the plaintiffs case, otherwise a reversal is not warranted. La. C.E. art. 103(A); Matranga v. Parish Anesthesia of Jefferson, LLC, 14-448 (La.App. 5 Cir. 5/14/15), 170 So.3d 1077, 1090. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the complainant’s burden to so prove. Graves v. Riverwood Int’l Corp., 41,810 (La.App. 2 Cir. 1/31/07), 949 So.2d 576, 581 (citing Emery v. Owens-Corporation, 00-2144 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, writ denied, 02-0635 (La. 5/10/02), 815 So.2d 842.)
After a review of the record, we do not find that the trial court abused its discretion in redacting the two statements from Mrs. Moonan’s timeline. We agree with the determination of the trial court that the redacted statements are hearsay. Under La. C.E. art. 801(c), hearsay is defined as a *535 statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. The redacted portions , of the timeline are those statements attributed to Dr. Monte, even though Mrs. Moonan admitted that she did not hear anything said by the doctor during that conversation. Nevertheless, the Moonans have offered the time-line into evidence as proof that Dr. Monte breached the standard of care by refusing to authorize Mr. Moonan to return to the emergency room. The trial court did not err in redacting those hearsay statements from the timeline. The Moonans’ second assignment of error is-without merit.
Having found that the trial court did not err or abuse its discretion in allowing Dr. Diechmann’s testimony or in redacting portions of Mrs. Moonan’s timeline as hearsay, there is no basis for overturning the jury’s unanimous verdict in this ease in defendants’ favor. Consequently, the trial court also did not abuse its discretion in denying the Moonans’ motion for new trial on the basis of these alleged errors. Accordingly, both judgments of the trial court are affirmed.
AFFIRMED