| | | |
|---|---|---|
| ISIAH COLE JR. AND HIS WIFE, KAREN COLE | * | NO. 2024-CA-0437 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| NEW ORLEANS EMERGENCY MEDICAL SERVICES, CITY OF NEW ORLEANS, DERECK BLANCHARD, NICHOLAS MANNING | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-02271, DIVISION "M-13"
Honorable Paulette R. Irons
* * * * * *
**Judge Monique G. Morial**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Nakisha Ervin-Knott, Judge
Monique G. Morial)

Michael J. Riley, Sr.
Michael J Riley, Sr. Attorney LLC
201 St. Charles Avenue
Suite 2500
New Orleans, LA 70170

      COUNSEL FOR PLAINTIFF/APPELLANT

Jasmine L. Bandy
CITY ATTORNEY'S OFFICE
Michael J. Laughlin
ASSISTANT CITY ATTORNEY
William R. H. Goforth
ASSISTANT CITY ATTORNEY

Corwin M. St. Raymond
ASSISTANT CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido Street, Room 5E03
New Orleans, LA 70112


COUNSEL FOR DEFENDANT/APPELLEE


**AFFIRMED**
**MARCH 6, 2025**

This is a medical malpractice action. Appellants, Isiah Cole, Jr. (Mr. Cole) and his wife, Karen Cole (Mrs. Cole), seek review of the trial court's May 10, 2024 judgment denying the liability of Defendants, New Orleans Emergency Medical Services (NOEMS), the City of New Orleans (City), Derek Blanchard (Blanchard) and Nicholas Manning (Manning) for injuries Mr. Cole sustained during transport to the hospital. After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court.

## Facts and Procedural History

On June 23, 2017, Mr. and Mrs. Cole were asleep at their home when Mrs. Cole was startled awake by noises made by her husband. Mrs. Cole observed Mr. Cole convulsing in their bed. She immediately dialed 911, awakened her daughter, Shonda Jenkins, and informed her that Mr. Cole was having a medical episode. After speaking with 911, Mrs. Cole placed Mr. Cole on his side, counted his breathing and waited for NOEMS to arrive. Mr. Cole's symptoms began to wane as the paramedics arrived.

1

Blanchard and Manning, emergency medical service paramedics (Paramedics), arrived on the scene and began evaluating Mr. Cole. They took his vital signs and asked him a series of questions to gauge his mental status. After conversing with Mr. Cole and observing him, they informed Mr. Cole that he would be transported to the hospital. Initially, Mr. Cole refused transport. He stated that he was feeling better after his medical incident and did not want to go to the hospital. NOEMS continued to assess him and decided to transport Mr. Cole over his objections. Mr. Cole reiterated that he did not want to go to the hospital, but he did not resist them. Blanchard and Manning, with the assistance of members of the New Orleans Fire Department, removed Mr. Cole from the bed and placed him on a flexible Reeves Stretcher. NOEMS and firemen carried Mr. Cole down a flight of stairs, placed him on a standard stretcher and transported him to Ochsner Hospital for further treatment.

Mr. Cole alleges that during transport NOEMS intentionally dropped him at the top of the stairs to teach him a lesson. When he asked them "why are ya'll handling me like this?!," he said no one responded. He began to cry and experience an onset of back pain. NOEMS transported him to the hospital for evaluation. Emergency room doctors determined that Mr. Cole had experienced a seizure. Several images were taken of Mr. Cole; a CAT scan and an X-ray of the thoracic spine which noted compression fractures to Mr. Cole's spine.

On or about June 19, 2018, Mr. and Mrs. Cole filed a complaint with the Louisiana Patient Compensation Fund requesting a Medical Review Panel (MRP)

be convened to consider the incident and the care he received on June 23, 2017. The MRP convened and rendered a decision on January 26, 2021. It was the opinion of the MRP that "there is a material issue of fact, not requiring an expert opinion, bearing on liability for consideration by the Court."

Mr. and Mrs. Cole filed a petition for damages for medical malpractice against NOEMS, the City of New Orleans, Blanchard and Manning on March 12, 2021. The Coles alleged that Blanchard and Manning breached the standard of care owed to Mr. Cole by transporting him to the hospital over his objections and dropping him. Mr. Cole claimed that as a direct result of being dropped, he suffered compression fractures to his spine. The Coles alleged that the City was vicariously liable as Blanchard and Manning were acting in the course and scope of their employment at the time of the incident.

On May 25, 2023, the Coles filed a motion for summary judgment alleging that the expert opinion of Dr. Gerald Williams, a former member of the MRP reviewing Mr. Cole's care, was sufficient to support summary judgment in their favor. Dr. Williams' opinion was Mr. Cole likely suffered a trauma between leaving his home and arriving at the hospital. The trial court declined to make a credibility determination between the assertions of Mr. Cole and NOEMS at the hearing and denied the Coles' motion for summary judgment. [1]

---

[1] In case 2023-C-0697, the Coles sought review of the trial court's October 2, 2023 judgment denying their motion for summary judgment. This court denied their writ application.

Trial commenced on May 1, 2024. At trial, the court considered the testimony of the Coles, their medical expert, Dr. Williams, their daughter, Shonda Jenkins, Blanchard, Deputy Chief of Operations of NOEMS, Christopher Keller, and Captain Paul Steele of the New Orleans Fire Department. On May 10, 2024, the trial court rendered its judgment and written reasons finding no liability on behalf of NOEMS, the City, Blanchard and Manning. The Coles filed a motion for devolutive appeal on May 30, 2024.

## Standard of Review

The standard of review in a medical malpractice action is the manifest error or clearly wrong standard that is applicable to ordinary negligence actions. *Johnson v. Ray*, 12-0006, p. 6 (La. App. 4 Cir. 12/5/12), 106 So.3d 629, 635 (citation omitted). "In order to reverse a fact-finder's determination, an appellate court must review the record in its entirety and make the following two determinations: [i] that a reasonable factual basis does not exist for the finding, and [ii] that the record establishes that the fact-finder is clearly wrong or manifestly erroneous." *Serpas v. Tulane Univ. Hosp. & Clinic*, 13-1590, pp. 12-13 (La. App. 4 Cir. 5/14/14), 161 So.3d 726, 736 (citing *Salvant v. State*, 05-2126, p. 5 (La. 7/6/06), 935 So.2d 646, 650). The appellate court's duty is to determine whether the factual findings made by the trial court are reasonable. *Id.* If there are two permissible views of the evidence, then the fact-finder's conclusion cannot be manifestly erroneous or clearly wrong. *Wallace v. Howell*, 09-1146, p. 2 (La. App. 4 Cir. 1/13/10), 30 So. 3d 217, 218.

4

On appeal, the Coles raise four assignments of error. In the first assignment of error, the Coles assert that the trial court was clearly wrong in not accepting as true the testimony of the accepted medical expert, Dr. Gerald Williams. In the second assignment of error, the Coles state that the trial court was manifestly erroneous in not recognizing that Mr. Coles' constitutional and statutory rights to refuse treatment were violated by defendants. In the third assignment of error, the Coles argue that the trial court erred in denying the admission of Dr. Williams' affidavit. In the final assignment of error, the Coles argue the trial court was clearly wrong in not finding by a preponderance of the evidence and/or through the doctrine of *res ipsa loquitor* that Mr. Cole was not dropped by the defendants. For the purposes of clarity and cohesion, we will consider assignments of error numbers one and three together as these assignments reference the Coles' expert, Dr. Gerard Williams' testimony at trial and his trial affidavit which the trial court excluded as an exhibit.

**Discussion**

**Assignments of Error Numbers One and Three**

In the first assignment of error, the Coles assert that the trial court did not accept the testimony of their expert, Dr. Gerard Williams, as true. Dr. Williams is a board-certified physician in internal medicine and has been a practicing physician since 1996. He also trained in the field of pediatrics and is a medical director at two senior care facilities in Lafayette, Louisiana. Dr. Williams was the sole

physician on the MRP that reviewed Mr. Cole's care and treatment by Blanchard and Manning. After the MRP rendered its opinion, Dr. Williams was contacted by counsel for Mr. Cole to review Mr. Cole's medical records and render an expert opinion. In preparation for trial, Dr. Williams reviewed the records of Mr. Cole prior to the June 23, 2017 incident and shortly thereafter. After a review of these records, Dr. Williams' testified to his opinion at trial that it was highly probable that Mr. Cole suffered some type of trauma between the time EMS transported him from his home to the hospital. He stated that there was no evidence of back pain or fractures in Mr. Cole's medical records prior to June 23, 2017. Yet after the June 2017 emergency room admission, an X-ray of the spine showed compression fractures at Mr. Cole's thoracic and lumbar vertebrae, T4, T5 and L1.

At trial, counsel for appellees challenged Dr. Williams' expertise in geriatric medicine but, after questioning his background and education, did not object to admitting Dr. Williams as an expert in internal medicine and pediatrics. The Coles' counsel and the trial court judge then queried the doctor about his experience in geriatrics. After this colloquy, the trial judge certified Dr. Williams as an expert in the field of geriatric medicine, based on his experience, expertise and the fact that he was a member of the MRP.

After a thorough review of the trial transcript, the judgment of the trial court and its well-reasoned written reasons, we do not find any evidence that the trial court did not accept Dr. Williams' testimony. The court qualified him as an expert in geriatrics, a field for which he is not board-certified. Instead, his specialty and

early training were in internal medicine and pediatrics. The trial court was persuaded by his work with two senior care facilities in Lafayette, Louisiana, and that he had been responsible for at least two hundred patients there since 2008.

Further, the court did not strike Dr. Williams' testimony. The record is devoid of evidence that the trial court did not accept his testimony as true. Instead, the court allowed him to testify as an expert over the objection of the appellees and considered his testimony in light of the other testimony and evidence before it. Thus, we do not find that the trial court committed manifest error in its consideration of the expert testimony.

In assignment of error number three, the Coles assert that the trial court erred when it denied the admission of Dr. Williams' affidavit. A trial court is given vast discretion in its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of a clear abuse of discretion. *Moonan v. La. Med. Mut. Ins. Co.*, 16-113, p. 7 (La. App. 5 Cir. 9/22/16), 202 So.3d 529, 534 (citation omitted). The appellate court must review whether the ruling was in error and if the error prejudiced the complainant's case. (citation omitted). The complainant must prove that the error, in comparison of the total record, had a substantial impact on the outcome of the case. *Id*. *See also Perniciaro v. Hamed*, 20-62 p. 29 (La. App. 5 Cir. 12/16/20), 309 So.3d 813, 835.

In the instant matter, Dr. Williams was available and testified at trial. Counsel for the Coles had the opportunity to elicit pertinent and relevant testimony regarding his medical opinion as to the cause of Mr. Cole's compression fractures.

7

Further, Dr. Williams was subject to cross-examination and rebuttal. A complete record was made of Dr. Williams findings in the trial court. Thus, we find no prejudice here. Weighing the totality of the circumstances, the trial court did not commit an abuse of discretion in denying the doctor's affidavit to be admitted into evidence.

**Assignment of error number 2**

The Coles aver that the trial court was manifestly erroneous in not recognizing his right to refuse transport to the hospital pursuant to La. R.S. 40:1159.7, which provides that "[n]othing contained herein shall be construed to abridge any right of a person eighteen years of age or over to refuse to consent to medical or surgical treatment as to his own person."[2] La. R.S. 40:1159.4(1) provides that an adult is empowered to consent to any surgical or medical procedures not prohibited by law. In the case of an emergency, however, an adult's consent may be overridden. La. R.S. 40:1159.5(A) states:

> In addition to any other instances in which a consent is excused or implied at law, a consent to surgical or medical treatment or procedures suggested, recommended, prescribed, or directed by a duly licensed physician will be implied where an emergency exists. For the purposes hereof, an emergency is defined as a situation wherein: (1) in competent medical judgment, the proposed surgical or medical treatment or procedures are reasonably necessary; and (2) a person authorized to consent under R.S. 40:1159.4 is not readily available, and any delay in treatment could reasonably be expected to jeopardize the life or health of the person affected, or could reasonably result in disfigurement or impair faculties.

---

[2] The Coles cited La.R.S. 40:1299.56 in his brief. La. R.S. 40:1159.7 has been redesignated from R.S. 40:1299.56 by H.C.R. No. 84 of the 2015 Regular Session. Added by Acts 1975, No. 798, § 1.

At trial, the Coles testified that Mr. Cole did not want to be transported to the hospital. Mr. Cole testified that he refused to go to the hospital because he was no longer seizing and he felt okay. He asserted that NOEMS were determined to take him despite his objections. But he did not resist them. Mrs. Cole testified that he eventually acquiesced in the transport, but reiterated his unwillingness to go. Mrs. Cole said that even though he did not want to leave, "he did what he had to do." The record is devoid of any testimony or evidence that Mr. Cole was forcibly removed by NOEMS.

In his brief to this Court, counsel for Mr. Cole focused on the Glasgow score used by the paramedics on scene in assessing Mr. Cole prior to transporting him to the hospital to support his contention that Mr. Cole had the mental capacity to refuse transport. The Glasgow score, according to the testimony of Blanchard, is a method by which EMS assess a patient's mental status. Mr. Cole received a score of 14 on a scale of 15. A score of 15 means the patient is fully alert, aware of his circumstances and oriented as to time and place. Since Mr. Cole received a Glasgow score of 14, the Coles argue that there was no sense of urgency in bringing Mr. Cole to the hospital because he was oriented as to time and place. They also assert that EMS's decision to transport Mr. Cole over his objection violated his right to refuse treatment.

Blanchard testified that when he and his partner, Manning, arrived, Mr. Cole's family seemed concerned with his altered mental status.[3] They assessed him and deemed that Mr. Cole had a new onset of confusion. He recalled Mr. Cole saying he did not want to go to the hospital, but they continued to ask him

---

[3] Nicholas Manning did not appear for trial. He presently resides out of town and his counsel waived his appearance.

questions and assess his vital signs. In regard to the Glasgow score assessed to Mr. Cole, Blanchard testified that even though Mr. Cole received a score of 14, he was very confused after his apparent seizure. In the end, they transported Mr. Cole because he had no prior history of seizures, his mental status was altered, and they were concerned he may have suffered a stroke.

At the time the June 23, 2017 incident occurred, Mr. Cole was a 75-year-old man with a number of health problems. EMS evaluated him thoroughly and determined that a new onset of seizure and his altered mental status necessitated his transport to the hospital. As Blanchard testified, "Time is brain cells." The trial court found that EMS adhered to proper protocol, and their determination that Mr. Cole did not have the capacity to refuse treatment did not violate the standard of care. After a review of the record and the applicable law, we agree and find that EMS acted pursuant to La. R.S. 40:1159.5 because they reasonably believed that any delay in diagnosis or treatment could have been harmful to Mr. Cole. We do not find that the trial court failed to recognize Mr. Cole's constitutional and statutory rights; instead, we agree with the trial court that NOEMS could supersede those rights in order to prevent harm to Mr. Cole. Therefore, we find no error in the trial court's finding.

**Assignment of error number 4**

Lastly, the Coles argue that the trial court erred in not finding by a preponderance of the evidence and/or through the doctrine of *res ipsa loquitor* that Mr. Cole was dropped by Blanchard and Manning. We first address the doctrine of *res ipsa loquitor*, which according to the Louisiana Supreme Court must be "sparingly applied." *Spott v. Otis Elevator Co.,* 601 So.2d 1355, 1362 (La. 1992) (citing *Day v. National U.S. Radiator Corp.,* 241 La. 288, 128 So.2d 660,

665 (1961)). The doctrine only applies when "the circumstances surrounding an accident are so unusual" as to give rise to an inference of negligence. *Id*. It does not apply to cases involving ordinary accidents or injuries that often occur in the absence of negligence. *Id.*

We note that this doctrine was not raised by the Coles in their petition for damages or argued at trial. Further, the trial court makes no mention of the doctrine in its trial judgment or written reasons. Issues raised for the first time on appeal are not properly before an appellate court. *See Quinn v. Palmer*, 23-0181, p. 16 (La. App. 4 Cir. 2/5/24), 385 So.3d 249, 260 (citation omitted). "It is well settled that appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Hardy v. Juvenile Just. Intervention Ctr.*, 21-0715, p. 5 (La. App. 4 Cir. 6/15/22), 342 So.3d 1076, 1080 (citation omitted). Thus, we decline to discuss the doctrine of *res ipsa loquitor* further and instead address the trial court's factual finding that Mr. Cole was not dropped by Blanchard and Manning.

"In a medical malpractice case, a plaintiff must establish the following three elements: (i) the standard of care applicable to the defendant; (ii) the defendant breached that standard of care; and (iii) the existence of a causal connection between the breach and the resulting injury." *Patrick v. Triay*, 22-0766, p. 5 (La. App. 4 Cir. 1/26/23), 357 So.3d 872, 875-76 (citation omitted). *See also* La. R.S. 9:2794 (A). As a general rule, the plaintiffs must provide expert testimony in order to establish the necessary elements for plaintiffs to meet their burden of proof. *Hawthorne v. Tulane Med. Ctr.*, 22-0362, p. 7 (La. App. 4 Cir. 12/12/22), 367 So.3d 689, 695 (citation omitted).

11

The standard of care applicable to EMS practitioners is set forth in La. R.S. 40:1133.13(A)(1):

> Any certified ambulance operator, certified pursuant to the provisions of this Part, or any emergency medical services practitioner, licensed pursuant to the provisions of this Part, who renders emergency medical care to an individual while in the performance of his medical duties and following the instructions of a physician shall not be individually liable to the individual for civil damages as a result of acts or omissions in rendering the emergency medical care, except for acts or omissions intentionally designed to harm, or for grossly negligent acts or omissions which result in harm to the individual.

Thus, in order for NOEMS to be held liable for injuries allegedly sustained as a result of their medical treatment of Mr. Cole, the Coles must demonstrate more than mere negligence. They have to show that Blanchard and Manning either intentionally tried to harm Mr. Cole, or the harm was caused by gross negligence.

At trial, Blanchard testified that neither he nor his partner dropped Mr. Cole as they carried him down the stairs of his home. He also testified that had they dropped Mr. Cole they would have notated the incident in their electronic care report. They further testified that they likely would not have suffered any punishment from their employer. The testimony of Christopher Keller bolstered this testimony. Chief Keller testified that he was well acquainted with EMS policies regarding discipline and reporting requirements. He referred to a specific clinical policy that encourages NOEMS to self-report accidents and errors that cause injury to a patient. He asserted that as long as an incident is reported timely and not concealed, the NOEMS involved in the incident were not subject to punitive action.

Although Manning did not appear at trial, he testified in his deposition that he and Blanchard did not drop Mr. Cole. Also, Captain Paul Steele with the New Orleans Fire Department testified that he and a couple of his men assisted the

12

paramedics in transporting Mr. Cole down the stairs of his home in the Reeves stretcher. In addition to his occupation as a fireman, Captain Steele is also trained in emergency medical services. On June 23, 2017, he and his crew responded to Mrs. Cole's 911 call. He stated that protocol provides when firemen arrive before NOEMS they assess the patient, take vital signs, and treat for life threats. If they arrive at the same time as NOEMS or after, the firemen assist NOEMS. On the night of the incident, Captain Steele's crew arrived at the same time as NOEMS. They assisted NOEMS with bringing the necessary equipment inside of the house, and maintained a backup position as NOEMS assessed Mr. Cole.

Captain Steele testified that once NOEMS decided to transport Mr. Cole to the hospital, he and the firemen assisted in his transport down the stairs. Captain Steele had a crew of four at the time of the incident. He, NOEMS and at least one other member of his New Orleans Fire Department crew were on each corner of the stretcher for the transport. Captain Steele denied dropping Mr. Cole and stated that it would have been an abnormal event; therefore, he would have been required to document it. He also testified that he did not witness any physical trauma to Mr. Cole prior to or after his transport from upstairs of the home to the ambulance.

Mr. Cole was the sole witness at trial to allege that he had been dropped. Mrs. Cole and their daughter, Shonda Jenkins, both testified that they were not near the stairs during Mr. Cole's transport. Instead, they both testified that NOEMS asked them to remain upstairs until they moved Mr. Cole downstairs. Ms. Jenkins testified that she heard a thump on the stairs during his transport, but no other corroborating testimony was elicited for Mr. Cole's assertion that he was dropped. Moreover, Dr. Williams, the Coles' expert, could not definitively state that Mr. Cole was dropped. Although he opined that it was possible and probable that Mr.

13

Cole suffered a trauma between the time NOEMS removed him from the home and he arrived at the hospital because there was no evidence of compression fractures in his medical records prior to his admission to the emergency room on June 23, 2017, he could not testify with certainty that Blanchard and Manning breached the standard of care in transporting Mr. Cole. Later in his testimony, he stated: "I probably believe that he was dropped." Yet, when specifically asked whether the EMS breached their standard of care, he said: "That is a harsh statement which it was because there were some things that were done by NOEMS that were appropriate. If he was dropped or fell that was inappropriate."

The relevant standard of care here is not ordinary negligence. Possible inappropriate conduct by NOEMS is not conclusive of gross negligence or intentional conduct. Gross negligence has been defined by the jurisprudence as "want of even slight care and diligence" and "want of that diligence which even careless men are accustomed to exercise." *See Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, p. 5 (La. 7/5/94), 639 So.2d 216, 219 quoting *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (1942) (citation omitted).

In order to prevail on the merits at trial, the Coles had to prove at trial that they could meet each element of their claim for medical malpractice, yet their expert could not establish the principal requirement-that the standard of care was breached. After review of the judgment of the trial court and its written reasons, we find that the trial court was not manifestly erroneous in finding that the Coles failed to prove by a preponderance of the evidence that Blanchard and Manning dropped Mr. Cole. We pretermit discussion of the other elements required to establish medical malpractice for this reason.

## DECREE

For the reasons discussed herein, we affirm the judgment of the trial court.

**AFFIRMED**